**FCLT LOANS ASSET CORP. and Timothy J. Blair, Class Representative, Appellants,**

v.

**FIRSTCITY FINANCIAL CORPORATION, Appellee.**

No. 01–06–00798–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 4, 2009.

David A. Furlow, Thompson & Knight L.L.P., Kent Geoffrey Rutter, Odean L. Volker, Haynes & Boone, LLP, Robert S. MacIntyre Jr., MacIntyre & McCulloch, LLP, Houston, TX, Susan Hays, Law Office of Susan Hays P.C., Dallas, TX, for Appellant.

John L. Hopwood, Locke Lord Bissell & Liddell, LLP, Matthew Ray Reed, Thompson & Knight LLP, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

JANE BLAND, Justice.

Before its failure in the early 1990s, FirstCity Bancorporation of Texas, Inc. (FirstCity), acting as trustee of its employee retirement trust, purchased a number of group annuity contracts (GACs) to replace the defined benefits formerly available to its employees under its employee retirement benefit plan. In 2001, Prudential Insurance Company (Prudential), one of the insurance companies from which FirstCity purchased GACs, converted from a mutual company to a stockholder-owned company, a process known as demutualization. This conversion resulted in the distribution of stock worth more than $ 17 million (the demutualization proceeds), in exchange for the membership interest in the two GACs.[1]

A dispute over the ownership of these demutualization proceeds arose. FirstCity Financial Corporation (FCFC) and FCLT Loans Asset Corporation (FCLT)—two entities created in connection with FirstCity's bankruptcy—and Timothy J. Blair, as representative for a class of the former FirstCity retirement plan participants, each has claimed exclusive entitlement to the proceeds, and filed cross-motions for summary judgment on the issue in the trial court. The trial court granted summary judgment in favor of FCFC. Holding that none of the appellants is entitled to the demutualization proceeds as a matter of law without a determination of ownership from the trustee of the benefit plan— who holds legal title to the GACs—we reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

---

1. The parties agreed that the stock should be liquidated to its cash value while the interpleader action was in the trial court.

## Background

In 1983, FirstCity established and funded a defined benefit retirement plan[2] for its employees. FirstCity placed the plan in a trust and appointed FirstCity National Bank of Houston (the Houston Bank) to serve as the trustee. In its capacity as trustee, the Houston Bank administered the plan, and held and invested FirstCity's contributions to the plan.

Three years later, FirstCity decided to terminate the retirement plan and the trust.[3] To replace the benefits promised under the plan, the Houston Bank, acting in its capacity as trustee, purchased two GACs[4] from Prudential in accordance with ERISA requirements. *See* 29 U.S.C. § 1341(b)(3)(A)(i) (2000). The GACs name as "Contract–Holder" "FirstCity National Bank of Houston As Trustee of the FirstCity Bancorporation Employee Retirement Trust," and provide that:

> The Contract–Holder will be the sole representative under this contract of each person and organization with an interest in the Plan. The Prudential will deal with the Contract–Holder except to the extent the Contract–Holder has directed The Prudential to do otherwise and The Prudential has consented thereto. The Prudential will be entitled to rely on any action taken or omitted by or on behalf of the Contract–Holder pursuant to the terms of this contract. The Contract–Holder at any time may, with the consent of The Prudential, appoint a successor Contract–Holder. Any successor Contract–Holder will have all the rights, duties, and obligations of the Contract–Holder; provided, however, that if the Contract–Holder notified The Prudential that it will cease to exist or cease to perform the duties of the Contract–Holder hereunder and no successor Contract–Holder is appointed, this contract shall nevertheless remain in full force and effect until the date on which there ceases to be any further Pension or other payments payable in accordance with the terms of this contract. That date will be the date as of which this contract terminates.

In 1992, the Federal Deposit Insurance Corporation (FDIC) declared the Houston Bank insolvent and appointed itself receiver. The FDIC created New FirstCity, Texas—Houston, N.A. (New Houston Bank) to take possession of certain assets of the Houston Bank, including its trust department.

Shortly after the receivership, FirstCity became the subject of an involuntary Chapter 11 bankruptcy proceeding. *See* 11 U.S.C. § 303. Two entities created in connection with FirstCity's bankruptcy reorganization plan still exist—FCFC and FCLT.

---

2. A defined benefit retirement plan consists of a general pool of assets upon which the employer bears the entire investment risk and must cover any underfunding as the result of a shortfall that may occur from the plan's investments. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439–40, 119 S.Ct. 755, 761, 142 L.Ed.2d 881 (1999). Conversely, if the defined benefit plan is overfunded, the employer may reduce or suspend his contributions. *Id.* at 440, 119 S.Ct. at 761. Upon retirement, the employee is entitled to a fixed periodic payment under the terms of the plan. *Id.* at 439, 119 S.Ct. at 761.

3. FirstCity discovered that the plan was overfunded, and took this action to recoup the surplus.

4. "Annuities are contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 254, 115 S.Ct. 810, 812, 130 L.Ed.2d 740 (1995).

Following confirmation of the plan, FCFC's Portfolio Committee adopted resolutions concerning the administration of the Houston Bank's employee benefit plans. The document memorializing those resolutions recites:

WHEREAS, the [liquidating trust] was established pursuant to the Confirmation Order and is a successor in interest and assignee of [the Houston Bank] under the Joint Plan of Reorganization, pursuant to which [the Houston Bank] transferred to [the liquidating trust] substantially all of its non-cash assets, including, but not limited to, its obligations as related to the Plans; and the trust accounts for such Plans and related trusts, along with the obligation to serve as trustee and/or investment manager under the terms of the trust agreements, to the extent such obligation remained, were transferred to Texas Commerce Bank National Association as a result of the Purchase and Assumption Agreement dated as of February 12, 1993 among the FDIC as Receiver of New FirstCity, Texas—Houston, N.A., the FDIC, and Texas Commerce Bank National Association;

NOW, THEREFORE, BE IT

RESOLVED that Chase Bank of Texas (formerly Texas Commerce Bank National Association) be, and it hereby is, confirmed, effective July 3, 1995, as Trustee and Investment Manager under the terms of the aforementioned Plans and related trust agreements....

Through a series of mergers and other transactions, JPMorgan Chase Bank, N.A. (JPMorgan) currently holds the two GACs purchased by the Houston Bank in its capacity as trustee, but JPMorgan's name does not appear on the GACs as the contract-holder, and the Houston Bank remains the named contract-holder on their face.

Nearly a decade after FirstCity's bankruptcy, Prudential "demutualized"[5] by reorganizing its business from a mutual insurance company to a stock insurance company. As part of the demutualization, Prudential exchanged its policyholders' membership interests for newly issued common stock. In this case, Prudential exchanged the membership interests attached to the two Prudential GACs for 321,211 shares of stock.

When Prudential attempted to locate the successor to "FirstCity National Bank of Houston As Trustee of the FirstCity Bancorporation Employee Retirement Trust"—the named contract holder—FCLT, FCFC, and JPMorgan made competing claims to ownership of the demutualization proceeds. Prudential brought this interpleader action after it found that it could not satisfactorily resolve the question of which entity was the successor trustee, and, as such, entitled to claim the proceeds.

FCLT, FCFC, and JPMorgan answered. FCFC also brought a counterclaim, asking that it be declared owner of the demutualization proceeds. In its answer, JPMorgan clarified that it did not claim the funds in its individual corporate capacity, but only in its capacity as successor trustee of the FirstCity employee retirement trust. JPMorgan acknowledged that, as successor trustee, it was the proper recipient of

---

**5.** Demutualization is the process of converting from a mutual insurance company (which is owned by policyholders) to a stock insurance company (which is owned by outside shareholders). BLACK'S LAW DICTIONARY 445 (7th ed. 1999); *see also Bank of N.Y. v. Janowick,* 470 F.3d 264, 267 (6th Cir.2006); James A. Smallenberger, *Restructuring Mutual Life Insurance Companies: A Practical Guide Through the Process,* 49 DRAKE L. REV. 513, 516 (2001).

the demutualization proceeds as "contract holder" under Prudential's plan of reorganization. In addition, JPMorgan filed a petition invoking the trial court's jurisdiction under the Texas Trust Code, asking for construction of trust provisions and determination of other issues relevant to the disbursement of the Prudential stock, specifically: (1) to whom the demutualization proceeds should ultimately belong; and (2) whether the event that produced the demutualization proceeds is an "actuarial error" within the meaning of applicable language in the trust. JPMorgan also petitioned for joinder of Timothy J. Blair, a former FirstCity employee, to serve as representative of a certified class of the former plan participants covered by the GACs.[6]

The trial court addressed Prudential's petition in interpleader and an "Agreed Emergency Motion for Immediate Release of Interpled Property" to JPMorgan, "as successor trustee of FirstCity Bancorporation Employee Retirement Trust," which the trial court considered as an unopposed request for re-registration of the interpled account and granted. Shortly thereafter, the trial court signed an order discharging Prudential from the suit and allowing it to recover its costs and attorney's fees from JPMorgan, as successor trustee. In addition, the trial court amended its re-registration order to authorize JPMorgan to serve as "Successor Trustee of the Trust, with all of the rights, powers and authority provided under the Trust Agreement (as amended) which established the Trust and under applicable law."[7]

Blair, on behalf of the retirement plan participants, FCFC, and FCLT all filed cross-motions for summary judgment, each

claiming—to the exclusion of the others—entitlement to the demutualization proceeds as a matter of law. JPMorgan did not move for summary judgment, but did file an omnibus response to the other parties' motions. The trial court denied FCLT and Blair's motions, and granted FCFC's motion, and rendered judgment that FCFC was owner of the demutualization proceeds. This appeal followed.

## DISCUSSION

Blair, as class representative, and FCLT each claim that the trial court erred in granting summary judgment in favor of FCFC declaring its entitlement to the demutualization proceeds as a matter of law.

### Standard of Review

█ We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Provident Life Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. When all parties move for summary judgment and the trial court grants one motion and denies the others, the reviewing court considers the summary judgment evidence presented by all sides, determines all ques-

---

**6.** JPMorgan declined to participate in this appeal.

**7.** At Blair's request, the trial court also added a statement that the order would "not prejudice the ability of any party to contend that the Trust terminated at some previous time."

tions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *See Dorsett,* 164 S.W.3d at 661; *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

*Propriety of summary judgment ruling*

■ Before FCLT, FCFC, and Blair moved for summary judgment, the trial court had already signed an order holding that JPMorgan, as successor trustee, was the contract holder of the GACs, and dismissing Prudential from the lawsuit. By virtue of its status as contract holder, JPMorgan, therefore, is the legal owner of the demutualization proceeds as a matter of law. For this reason, neither Blair, as class representative, FCFC, nor FCLT is entitled to the demutualization proceeds as a matter of law. Accordingly, we hold that the trial court erred in granting summary judgment in favor of FCFC on that issue.

■ When the trial court, with Prudential's agreement, declared JPMorgan as successor trustee and contract holder, the nature of the lawsuit changed. JPMorgan did not merely slip into Prudential's shoes in the interpleader action. An interpleader is a suit to determine a right to property held by a disinterested third party who is in doubt about ownership and who, therefore, deposits the property with the trial court to permit interested parties to litigate ownership, letting the court decide who is entitled to the funds and thereby avoiding the peril of deciding ownership itself. *Clements v. Minn. Life Ins. Co.,* 176 S.W.3d 258, 263 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Olmos v. Pecan Grove Mun. Util. Dist.,* 857 S.W.2d 734, 741 (Tex.App.-Houston [14th Dist.] 1993, no writ). It is undeniable that JPMorgan, as the successor trustee, holds legal title to the GACs and is responsible for the distribution of their proceeds.

JPMorgan's own pleadings, which invoke jurisdiction under the Texas Trust Code and acknowledge that proper disbursement of the demutualization proceeds requires an interpretation of trust language, repudiate any suggestion that JPMorgan lacks an interest in the proceeds. In its summary judgment response, JPMorgan stressed that this is a trust case and urged the trial court to construe the trust instrument to ascertain the proper beneficial owner or owners of the demutualization proceeds. Yet, without a request for affirmative relief from JPMorgan, the trial court was not in a position to make the rulings JPMorgan and the parties to this appeal sought assistance in determining, i.e., the ownership of these demutualization proceeds beyond the legal title vested with the trustee.

The Texas Trust Code accords jurisdiction over proceedings to

(1) construe a trust instrument;

(2) determine law applicable to a trust instrument;

. . .

(4) determine the powers, responsibilities, duties, and liability of a trustee;

(5) ascertain beneficiaries; [and]

(6) make determinations of fact affecting the administration, distribution, or duration of a trust. . . .

TEX. PROP.CODE ANN. § 115.001(a) (Vernon 2007 & Supp. 2008). These are the provisions invoked by JPMorgan and the provisions under which JPMorgan must proceed. The other parties' summary judgment motions were not properly before the court insofar as a determination of the legal ownership of the interpled funds, and the record as it stands is not sufficient to yield an unequivocal answer to the question of the ownership of the proceeds beyond the legal title holder.

## Conclusion

We hold that JPMorgan, as successor trustee, is the legal owner of the interpled demutualization proceeds as a matter of law, and the trial court thus erred in granting summary judgment in favor of FCFC on that issue. Because the trustee's participation is necessary to determine the appropriate disbursement of the demutualization proceeds, in consideration of the competing parties' interests and the status of the annuities purchased by the Plan, we deny the parties' agreed motion to abate this appeal, reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion. All other pending motions are dismissed as moot.