**Opinion issued August 12, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-13-00059-CV

_____

## J.G. WENTWORTH ORIGINATIONS, LLC, Appellant

## V.

## SHANTEL D. FREELON AND RSL FUNDING, LLP, Appellees

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1218154**

## O P I N I O N

Appellant, JG Wentworth Originations, LLC ("JGW"), challenges the district court's order approving the application of appellee, RSL Funding, LLP ("RSL"), for the transfer of certain payments to RSL from a structured settlement

owned by Shantal Freelon.[1]  In three issues, JGW contends that the district court erred in granting RSL's application in contravention of two prior court orders and the Structured Settlement Protection Act ("SSPA").[2]

We affirm.

## Background

As a part of a 1992 settlement agreement in a personal injury suit brought by her parents, Freelon is entitled to $1,596.16 per month, with three percent annual increases, beginning October 1, 2009 and continuing for twenty years through September 2029, and thereafter for the duration of her life.  The defendants who settled the lawsuit assigned to Confederation Life Insurance and Annuity Company ("Confederation") the obligation to make the payments to Freelon, and Confederation purchased an annuity to fund Freelon's monthly payments.  Pacific Life Insurance Company ("Pacific") subsequently assumed the obligation to make the payments, and it presently retains that obligation.

In 2008, Freelon entered into a transfer agreement with 321 Henderson Receivables Originations, LLC, now known as JGW.  Freelon agreed to convey from her structured settlement monthly payments in the amount of $450 from January 1, 2009 through and including September 1, 2009 and monthly payments in the amount of $596.16, with three percent annual increases, from October 1,

---

[1]     Freelon has not filed a brief or otherwise participated in this appeal.

[2]     *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 141.001–.007 (Vernon 2011).

2

2009 through and including December 1, 2019 (the "2009 JGW–Freelon Transaction"). The 165th District Court of Harris County approved the transfer and signed a final order[3] (the "2009 JGW–Freelon Order"). The 2009 JGW–Freelon Order assigned the pertinent payments to JGW and directed Pacific to make the payments to JGW.

Because Freelon sold only a portion of her structured-settlement payments, the 2009 JGW–Freelon Order approved a payment "Servicing Arrangement," which required that Pacific remit 100 percent[4] of the monthly structured-settlement payments to JGW (the "2009 Servicing Arrangement"). Pursuant to the 2009 Servicing Arrangement, JGW was to retain its portion of each monthly payment it received from Pacific, which constituted its assigned payment, and then remit the remaining portion due to Freelon. The 2009 JGW–Freelon Order provided that the 2009 Servicing Arrangement was to remain "binding and fully enforceable against [JGW] and Ms. Freelon, and under no circumstances [would JGW] or Ms. Freelon seek to compel [Pacific], nor [would Pacific] be required, to modify the [2009]

---

[3]     Cause number 2008-69855; *In re Shantel Desir'e Freelon, Annuitant*.

[4]     Pacific would not agree, and it could not be compelled under the SSPA, to divide the annuity payments between Freelon and JGW. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(4) (providing "neither the structured settlement obligor nor the annuity issuer may be required to divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees").

Servicing Arrangement so as to redirect any portion of the affected periodic payments to any entity other than [JGW]."

In 2011, Freelon completed a second transaction with JGW to sell it additional portions of her monthly structured-settlement payments. Freelon agreed to convey from her structured settlement to JGW monthly payments in the amount of $425, with three percent annual increases, beginning April 1, 2011 and continuing through and including December 1, 2019 (the "2011 JGW–Freelon Transaction"). After a hearing on March 25, 2011, the 164th District Court of Harris County approved the transfer and signed a final order[5] (the "2011 JGW–Freelon Order"). The 2011 JGW–Freelon Order provided for a servicing arrangement (the "2011 Servicing Arrangement").

The 2011 Servicing Arrangement provided that Pacific was to remit 100 percent of Freelon's monthly structured-settlement payments to JGW. JGW was to retain the portion of the payments assigned to it, including the portions of Freelon's payments transferred to it in 2009, and then remit the newly calculated remaining unassigned portion to Freelon.

Freelon subsequently entered into a third transaction to sell a portion of her monthly structured-settlement payments to RSL. The 152nd District Court of

---

[5] Cause number 2011-09229; *In Re Shantel Freelon, Annuitant*.

4

Harris County approved the transfer and signed a final order[6] (the "2011 RSL–Freelon Transaction"). Because the 2011 RSL–Freelon Transaction involved the transfer of payments commencing in January 2020, one month after the final payment transferred to JGW in the 2009 and 2011 JGW–Freelon Orders came due, and one month after the end of the JGW servicing term, it did not impact the 2009 or 2011 Servicing Arrangements. The 2011 RSL–Freelon Transaction required Pacific to send 100 percent of the monthly structured-settlement payments to RSL, and RSL was obligated to remit a portion of those payments to Freelon beginning in January 2020.

In March 2012, Freelon entered into a fourth transaction to sell a portion of her monthly structured-settlement payments to RSL. RSL then filed an application in the 269th District Court of Harris County seeking approval under the SSPA of a second transfer of certain monthly structured-settlement payments from Freelon to it. The case was then transferred to the 152nd District Court. RSL sought approval for the transfer to it of 140 monthly payments of $250 beginning January 1, 2016 and continuing through and including August 1, 2027.

JGW filed a Plea in Intervention and Objection to Transfer as an interested party as defined by the SSPA. In its Plea and Objection, JGW asserted that it had a

---

[6] Cause number 2011-61043l; *In Re A Transfer of Structured Settlement Payment Rights by Shantel D. Freelon.*

5

justiciable interest in the transaction based on its obligations under the Servicing Arrangements made pursuant to the 2009 and 2011 JGW–Freelon Orders; the orders are final, non-appealable, and cannot be modified or changed; and the proposed transfer could not be approved because it would contravene the 2009 and 2011 JGW–Freelon Orders.

RSL filed an amended application three days before the scheduled May 18, 2012 hearing seeking approval for a larger transaction between it and Freelon involving payments beginning on October 1, 2012 and through September 1, 2029 ("the 2012 RSL–Freelon Transaction"). After the May 18 hearing, RSL filed an Objection to Plea in Intervention and Motion to Show Authority, arguing that JGW did not have standing as an interested party under the SSPA to appear in the matter and oppose the proposed transfer between it and Freelon. On June 25, 2012, the district court signed an order denying RSL's objection to Plea in Intervention and Motion to Show Authority.

On May 24, 2012, RSL filed a pleading entitled "RSL Funding LLC's Supplemental Claim for Declaratory Judgment Against J.G. Wentworth Originations, LLC," seeking a determination of JGW's tax liability relative to excise taxes unrelated to the RSL–Freelon proposed transfer of structured settlement payments. JGW removed RSL's declaratory-judgment action to federal court, and RSL filed a motion to transfer or sever and remand the case. JGW

6

opposed remand of RSL's request for declaratory judgment, but did not oppose the severance and remand of RSL's application for court approval of the 2012 RSL–Freelon Transaction. The federal district court remanded the portion of the case relating to the SSPA transfer of structured-settlement payments, and it retained RSL's declaratory-judgment action.

The district court subsequently approved the 2012 RSL–Freelon Transaction and signed a final order (the "2012 RSL–Freelon Order"). The 2012 RSL–Freelon Order requires JGW to distribute the payments it receives from Pacific to RSL's designated assignee, Extended Holdings, Limited, rather than to Freelon directly. In the 2012 RSL–Freelon Order, the district court concluded that the 2012 RSL–Freelon Transaction does not contravene any prior court order or any applicable statute.

## Standard of Review

The trial court's determination that RSL's transfer application does not contravene any applicable statute or court order is a question of law that we review de novo. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We review a trial court's interpretation of a statute involving purely legal determinations under a de novo standard of review. *See id.* In construing statutes, we ascertain and give effect to the Texas Legislature's intent as expressed by the language of the statute. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

7

We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2013). Otherwise, we construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or such a construction would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). We presume that the legislature intended a just and reasonable result by enacting the statute. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2013). When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997); *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex. 1974).

### Transfers of Structured-Settlement Payments

In its first and second issues, JGW argues that the 2012 RSL–Freelon Order, as a matter of law, contravenes both the 2009 and 2011 JGW–Freelon Orders because it requires and directs JGW to "act differently" by imposing on it "entirely new and different obligations and liabilities."

The SSPA requires court approval for all direct or indirect transfers of structured settlement payment rights in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004 (Vernon 2011).

The SSPA contains the following pertinent definitions:

"Transfer" means any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration, except that the term does not include the creation or perfection of a security interest in structured settlement payments rights under a blanket security agreement entered into with an insured depository institution, in the absence of any action to redirect the structured settlement payments to the insured depository institution, or its agent or successor in interest, or to enforce the blanket security interest against the structured settlement payment rights.

"Payee" means an individual who is receiving tax-free payments under a structured settlement and proposes to transfer payment rights under the structured settlement.

"Transferee" means a party acquiring or proposing to acquire structured settlement payment rights through a transfer.

"Transfer agreement" means the agreement providing for a transfer of structured settlement payment rights.

"Interested party" means, with respect to any structured settlement:

    (A)  the payee;

    (B)  any beneficiary irrevocably designated under the annuity contract to receive payments following the payee's death;

    (C)  the annuity issuer;

    (D)  the structured settlement obligor; and

    (E)  any other party that has continuing rights or obligations under the structured settlement.

*Id.* § 141.002(7), (9), (18), (19), (21).

The SSPA requires that the transferee provide to the payee a disclosure statement setting forth the primary financial terms of the completed transaction at least three days before the payee may sign a transfer agreement contract. *See id.*

§ 141.003. After the disclosure statement is delivered and the payee and transferee sign a transfer agreement, the transferee is responsible for filing an application for approval of the proposed transfer. *See id.* § 141.006(a). The application must be filed at least twenty days before a hearing for approval of a transfer, and the transferee shall file and serve on all parties copies of the application, transfer agreement, disclosure statement, listing of the payee's dependents and their ages, notices to any interested party, and notices of the hearing and the manner and time by which written responses must be filed with the trial court. *See id.* § 141.006 (b)(1)–(6).

If the trial court decides to approve the transfer, it must make the following express findings:

(1) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;

(2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and

(3) the transfer does not contravene any applicable statute or an order of any court or other governmental authority.

*Id.* § 141.004 (1)–(3).

In regard to its second and third issues, JGW asserts that the district court could not properly make the express findings required by section 141.004(3) and the express finding in the 2012 RSL–Freelon Order that it did not contravene any

10

other court order.[7]   In response, RSL asserts that JGW is "offensively using [its] servicing arrangement and Section 141.004(3) to encumber the unassigned portion of Freelon's income stream without ever disclosing that encumbrance on a disclosure statement" and such an encumbrance violates public policy.

Specifically, JGW asserts that the following language in the 2012 RSL–Freelon Order conflicts with and contravenes the 2009 and 2011 JGW–Freelon Orders:

> That "with respect to the Court's order that Wentworth shall receive certain monthly structured settlement/annuity payments from [Pacific] from January 2013 through December 2019 (the "Wentworth Term Payments") and retain the portion of said payments which were transferred and assigned to Wentworth . . . (the "Wentworth Assigned Payments"), and remit the totality of the remainder of said payments (the "Wentworth-Extended Holdings Serviced Payments") to Assignee (Extended Holdings, Ltd.) from January 2013 through December 2019 (the "Wentworth Servicing Term"), the "Wentworth Servicing Arrangement" . . . .
>
> [and]
>
> The transfer as set out in the Application and the Disclosure Statement and in the Transfer Agreement (collectively, the "Proposed Transfer"); (i) does not contravene any applicable Federal or State statute or an order of any court or other governmental authority, or responsible administrative authority, pursuant to Section 141.004(3) of the Texas Civil Practice and Remedies Code . . . .

JGW also complains that the 2012 RSL–Freelon Order provided that a "special custodial relationship is being created" with JGW as "servicer and custodian of the

---

[7]   We note that JGW does not assert that there is insufficient evidence to support the district court's finding that the 2012 RSL–Freelon Transaction did not contravene any court orders or statute.

11

Wentworth Serviced Payments for the benefit of [Freelon] and [Extended Holdings, Ltd.]."

The 2012 RSL–Freelon Order includes an express finding that it does not contravene any applicable statute or any court order pursuant to section 141.004(3). As RSL notes, the 2012 RSL–Freelon Transaction does not contravene the SSPA or the 2009 and 2011 JGW–Freelon Orders. Instead, it "keeps in place the identical arrangement fashioned by the [2009 and 2011 JGW–Freelon Orders]."

Because the SSPA does not define the word "contravene," we construe it using its plain and common meaning. "Contravene" is defined as "[t]o violate or infringe; to defy" and "to come into conflict with; to be contrary to." BLACK'S LAW DICTIONARY 377 (9th ed. 2009). In the 2009 and 2011 JGW–Freelon Orders, the district courts approved JGW's application to transfer portions of Freelon's structured-settlement payments from her to JGW. The 2009 and 2011 JGW–Freelon Orders provide that Pacific is to make the payments directly to JGW, with JGW retaining its portion of the payments and remitting the remainder due to Freelon. Freelon retained ownership of the remaining portions of the structured-settlement payments, even though she agreed in the 2009 and 2011 JGW–Freelon Transactions to let her remaining portions of the payments pass through to JGW before reaching her. In the 2012 RSL–Freelon Transaction, Freelon agreed to sell

12

additional portions of her structured-settlement payments to RSL. Freelon essentially asked the district court to approve a transfer in which the remainder of her structured-settlement payments from JGW be paid to RSL, rather than be directed to her, before RSL passed the final remainder to her. Thus, the 2012 RSL–Freelon Order does not "violate" or "conflict" with the 2009 and 2011 JGW–Freelon Orders.

While the SSPA provides a specific protection for Pacific and other structured-settlement obligors and annuity issuers from having to divide payments between the payee and any transferee, or between two or more transferees, it does not provide a similar protection for transferees who enter into "servicing arrangements," such as the one JGW entered into with Freelon. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(4) (Vernon 2011). RSL asserts that JGW is trying to "piggyback on [Pacific's] statutory right to refuse to split monthly annuity payments among recipients" and nothing in the SSPA applies to servicing arrangements to protect JGW. However, JGW has not asserted that the SSPA extends a similar protection to it as the first transferee receiving a payee's entire structured-settlement payment.

Moreover, nothing in the SSPA precludes Freelon from transferring additional portions of the remaining portions of her structured-settlement payments to RSL. Indeed, the SSPA appears to anticipate that payees may later transfer

13

additional payments. It provides that "[f]ollowing a transfer of structured settlement payment rights under this chapter . . . *any further transfer* of structured settlement payment rights by the payee may be made only after compliance with all the requirements of this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(5) (emphasis added). Nothing in the SSPA provides that a first transferee like JGW may not honor subsequent transfers, even if they are to be made to competing factoring company transferees.

We further note that the 2012 RSL–Freelon Order, in effect, also "protects" JGW in the sense that it recognizes and reaffirms JGW's right to first receive Freelon's structured-settlement payments and retain its portion of the payments from Pacific before remitting the remaining portion of the payments to RSL's assignee, Extended Holdings. In this way, the district court actually validated the 2009 and 2011 JGW–Freelon Orders, rather than contravening them.

Pursuant to the 2009 and 2011 JGW–Freelon Orders, Pacific remits Freelon's structured-settlement payments to JGW. The remainder, after JGW retains its portion of the payments, is due to Freelon, who is free to keep or transfer it to another pursuant to court approval. Accordingly, we hold that the district court did not err in concluding, as a matter of law, that the 2012 RSL–Freelon Order did not contravene the SSPA or the 2009 and 2011 JGW–Freelon Orders.

We overrule JGW's first and second issues.

14

**Modification or Amendment of the Prior Orders**

In its third issue, JGW argues that to the extent the 152nd District Court attempted or intended to amend, modify, or correct the 2009 and 2011 JGW–Freelon Orders, it erred because it could not "properly or legally" amend or modify prior final orders signed in the 165th and 164th District Courts. RSL notes that the district court did not enter a nunc pro tunc order "mooting any complaint," and it argues that JGW has waived the issue because it did not object to the entry of such an order by the trial court.

A nunc pro tunc judgment may be entered after a court has lost its plenary jurisdiction to correct a clerical error. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). A judgment nunc pro tunc is only proper if the court is correcting a clerical error in its judgment, not a judicial error. A clerical error does not result from judicial reasoning, evidence or determination. *Id.* Conversely, a judicial error occurs in the rendering, rather than the entering, of the judgment and arises from a mistake of law or fact that requires judicial reasoning to correct. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986); *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

JGW asserts that the district court attempted to correct a substantive judicial error, which could not be "corrected" as a clerical error via the nunc pro tunc process. Regardless, although the district court expressed its intent to enter a nunc

15

pro tunc order or other order amending the 2009 and 2011 JGW–Freelon Orders upon a motion by the parties, nothing in the record indicates that either party filed such a motion or the district court entered such an order.

JGW further asserts that RSL could not collaterally attack the 2009 and 2011 JGW–Freelon Orders, and it argues that the district court erred to the extent it allowed RSL to do so because RSL was not a party to those actions and, regardless, the district court lost plenary jurisdiction to change those orders. However, nothing in the record indicates that the district court took any action to modify or amend the 2009 and 2011 JGW–Freelon Orders. And, as noted above, the district court's order does not contravene the 2009 and 2011 JGW–Freelon Orders, which remain in full effect. In short, the district court did not allow RSL to "collaterally attack" the 2009 and 2011 JGW–Freelon Orders.

We overrule JGW's third issue.

## Conclusion

We affirm the order of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

16