**Opinion issued July 9, 2015**



FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/10/2015 8:25:41 PM
CHRISTOPHER A. PRINE
Clerk

In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00482-CV

_____

## RSL-3B-IL, LTD., Appellant

## V.

## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND PRUDENTIAL STRUCTURED SETTLEMENT COMPANY F/K/A PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY OF HOLMDEL, NEW JERSEY, Appellees

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2012-12560

## OPINION

This appeal concerns a settlement factoring company's rights, and an annuity company's obligations, arising from two judicially-approved factoring

agreements.[1]  The annuitant, Erica Adegoke,[2] entered into the agreements with two different factoring companies, the first in early 2003 with Settlement Capital Corporation (SCC) and the second later that year with Rapid Settlements, which assigned it to RSL-3B-IL.  Pursuant to the Structured Settlement Protection Act (SSPA), the factoring companies each procured approval of their factoring agreements agreement with a transfer order.  The first order, approving the SCC agreement, issued in January 2003 and the second order, approving the RSL agreement, issued in November 2003.  The first order directed the annuity issuer, the Prudential Insurance Company of America and Prudential Structured Settlement Company (collectively, Prudential), to deliver certain monthly structured settlement payments to SCC, and the second order directed Prudential to deliver parts of the same payments to RSL.

After receiving notice of the second transfer order, Prudential suspended the assigned payments, contending that the two orders created conflicting obligations.  In 2013, RSL sued Prudential for breach of contract and sought declaratory relief,

---

[1]  A factoring company buys streams of future structured-settlement payments in exchange for discounted lump-sum payments.  The Structured Settlement Protection Act requires court approval for all direct or indirect transfers of structured settlement payment rights in Texas.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004 (West 2011).

[2]  Erica Adegoke is deceased; her daughter, Olubumi Adegoke, inherited the remaining annuity payments.  This development does not affect the issues on appeal, so we refer to them interchangeably as "Adegoke."

asserting its rights as Adegoke's assignee under the factoring agreement. Prudential answered and interpleaded the funds. The parties proceeded to trial. The trial court granted Prudential's motion for directed verdict on RSL's breach of contract claim, and it awarded attorney's fees based on the jury's verdict.

On appeal, RSL challenges the trial court's directed verdict, the propriety of the interpleader claim and attorney's fee award, and the severance of Adegoke's petition in intervention from the claims involved in this appeal. We conclude that the trial court properly granted a directed verdict and awarded Prudential its attorney's fees. We further conclude that it acted within its discretion in granting a severance. We therefore affirm.

## Background

In November 1993, Adegoke agreed to a structured settlement to resolve her personal injury claim against a tort defendant. The tort defendant bought an annuity from Prudential to discharge its obligation under the settlement agreement.

In January 2003, Adegoke sold a portion of her structured-settlement payments to SCC. The factoring agreement, as reflected in the order signed by the county court, approves Adegoke's assignment to SCC of a portion of each of her monthly structured-settlement payments due from February 5, 2003 through October 5, 2013. The court's order directed Prudential "to deliver and make

payable to [SCC]" the full amount of each monthly payment due to Adegoke, and required SCC to remit to Adegoke the remainder of each payment.

In the November 2003 agreement, Adegoke agreed to transfer to Rapid Settlements the residual monthly payments that she had retained after subtracting the amount owed to SCC under the January 2003 order, and Rapid assigned the payments to RSL. The RSL factoring agreement delineated a period from February 4, 2004 through October 2013.

This appeal centers on the language in the November 2003 order that directs Prudential "to deliver and make payable" to RSL the "portion of the [assigned] monthly annuity payments" remaining after subtraction of SCC's share. The structured-settlement payments sold to SCC and RSL do not overlap, but the two trial court orders approving the factoring arrangements direct Prudential to send the same funds to different companies. One order requires Prudential to send the entire amount of each payment to SCC; the other requires it to send a portion of that same payment to RSL.

Because the two orders imposed conflicting obligations on Prudential, it suspended the payments to SCC and RSL and sought a stipulation clarifying the obligations of the parties. From 2006 until 2012, Prudential, SCC, Rapid, and RSL made various attempts to resolve the conflict, to no avail.

*Course of proceedings*

In 2012, RSL sued Prudential, asserting breach of contract and requesting declaratory relief. Prudential responded by interpleading the withheld annuity payments. It asked the trial court to resolve the conflicting payment obligations imposed by the two transfer orders and to declare the respective rights of Rapid, RSL, and SCC to the payments at issue and to clarify Prudential's payment obligations under the orders.

In August 2013, Adegoke intervened in the suit. She sued RSL for breach of contract, alleging that it had failed to comply with the factoring agreement. She sought damages and attorney's fees for the breach. RSL moved to compel arbitration on Adegoke's claims. Adegoke nonsuited her claims, and the trial court signed an order dismissing them without prejudice.

The parties tried RSL's breach-of-contract claim and Prudential's attorney's-fee claim to a jury. At the close of evidence, the trial court directed a verdict that RSL take nothing on its breach-of-contract claim. The jury decided the issue of Prudential's attorney's fees, finding that Prudential was entitled to attorney's fees of $8,860.95. The trial court entered a judgment that RSL take nothing and awarded attorney's fees to Prudential based on the jury's verdict. After denying RSL's motion for new trial, the trial court severed any remaining claims between Adegoke and RSL, making the judgment final.

**Discussion**

## I.    Directed Verdict on Breach of Contract Claim

### A.    Standard of review

We review directed verdicts under the same legal-sufficiency standard that applies to no-evidence summary judgments. *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005); *see Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Keller*, 168 S.W.3d at 810. We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* at 827. The nonmovant bears the burden to identify evidence before the trial court that raises a genuine issue of material fact as to each challenged element of its cause of action. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206 (Tex. 2002). A directed verdict is proper if a party "fails to present evidence raising a fact issue essential to [its] right of recovery," or if the party "admits or the evidence conclusively establishes a

6

defense to [its] cause of action." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We may affirm a directed verdict on any ground that supports it. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

## B. Structured Settlement Protection Act

Rights and responsibilities arising from a transfer of structured-settlement payment rights, like those asserted in this appeal, cannot exist without agreements among the parties. Standing alone, however, those agreements cannot transfer settlement rights in Texas—they are unenforceable unless a Texas trial court has approved the proposed transfer in an order that complies with the SSPA's requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004 (West 2011); *see also Washington Square Fin'l, LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 768, 771 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (agreeing with RSL Funding's contention that "court approval is both a contractual and a statutory condition precedent to formation of a transfer agreement," so that agreement, standing alone, could not provide basis for tortious-interference claim).

To achieve a transfer of structured-settlement payment rights, a factoring company initiates a proceeding in the trial court by applying for approval of the proposed transfer. TEX. CIV. PRAC. & REM. CODE ANN. § 141.006 (WEST 2011). A trial court's order approving a transfer must include the following findings:

7

> (1)    the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;
>
> (2)    the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing;  and
>
> (3)    the transfer does not contravene any applicable statute or an order of any court or other governmental authority.

TEX. CIV. PRAC. & REM. CODE ANN. § 141.004.   The factoring company's application typically includes affirmative representations and evidence to support these three findings.

Before the court may approve a transfer, the factoring company must provide notice to other interested parties, including the annuity issuer.  TEX. CIV. PRAC. & REM. CODE ANN. § 141.006(b); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 141.002(7)(C) (West 2011).   If the factoring company, as transferee, fails to comply with the notice requirements, it may be held liable to the structured-settlement obligor or annuity issuer for any "liabilities or costs, including reasonable attorney's fees, arising as a consequence of the transferee's failure to comply with [the SSPA]."  TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(3)(B) (West 2011).

The SSPA identifies the structured-settlement obligor or annuity issuer as an interested party in a proposed transfer of structured-settlement payments.  Tex. Civ. Prac. & Rem. Code Ann. § 141.002(7)(C).  Unlike the factoring company and

8

the structured-settlement payee, it does not have any direct financial interest in the transfer. An annuity issuer does, however, have potential liabilities that could arise in connection with the transfer of a payment obligation, such as making payments to an incorrect or unauthorized payee. *See See Transam. Occid. Life Ins. Co. v. Rapid Settlements Ltd.*, 284 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (recognizing that annuity issuers "are not merely stakeholders, but rather have a unique interest in ensuring compliance with the statutory restrictions on the transfer of structured settlement rights" to avoid conflicting payment demands and potentially adverse consequences resulting from failure to comply with state structured settlement protection acts); *Symetra Nat'l Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 14–07–00880–CV, 2009 WL 1057339, at *5 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 802 (Tex. App.—Tyler 2007, no pet.) (affirming anti-suit injunction against factoring company to prevent annuity issuer from incurring unnecessary legal fees and expenses and from being exposed "to significant uncertainty as to whom it must pay and a significant risk of double liability") (quoting *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2007 WL 114497, at *35 (S.D. Tex. Jan. 10, 2007), *aff'd*, 775 F.3d 242 (5th Cir. 2014)).

The SSPA implicitly recognizes that an annuity issuer would incur an unforeseen increase in transaction costs and responsibilities if structured-settlement transfer agreements required an annuity issuer to make periodic payments to more than one party. The statute protects an annuity issuer from having to divide payments between the payee and any transferee, or between two or more transferees or assignees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(4) (West 2011). It also protects the annuity issuer from increased transaction costs by limiting potential claims relating to the transferred payment rights. Specifically, following a transfer of structured-settlement payment rights, the SSPA provides:

> the structured settlement obligor and the annuity issuer shall, as to all parties except the transferee, be discharged and released from any and all liability for the transferred payments.

TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(1) (West 2011).

## C. Analysis

### 1. The directed verdict

RSL's breach-of-contract claim against Prudential derives from its asserted role as Adegoke's assignee. To prevail on its breach-of-contract claim, RSL was required to prove: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach; and (4) the plaintiff's damages resulting from that breach. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 247 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Winchek v.*

10

*Am. Express Travel Related Servs. Co*., 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established." *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971)); *see also Orix Capital Mkts., L.L.C. v. Wash. Mut. Bank*, 260 S.W.3d 620, 623 (Tex. App.—Dallas 2008, no pet.) ("Where the evidence is undisputed regarding a party's conduct under a contract, the judge alone must determine whether it shows performance or breach of its contract obligation.") (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied)).

RSL bases its breach-of-contract claim on its contention that Adegoke, as third-party beneficiary of the annuity contract, retained the right to sell the unassigned portions of her annuity payments to RSL through the transfer agreement and that Prudential's failure to make those payments as directed constituted a breach of that contract. This contention relies on *J.G. Wentworth Originations, LLC v. Perez*, No. 01–13–00264–CV, 2014 WL 3928590 (Tex. App.—Houston [1st Dist.] Aug. 12, 2014, no pet.) and *J.G. Wentworth Originations, LLC v. Freelon*, 446 S.W.3d 426 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In those cases, the original transfer orders contained servicing

11

agreements that required the annuity issuer to send each periodic payment to the original factoring company, which in turn would remit the unassigned portion of the payment to the payee. *Perez*, 2014 WL 3928590, at *1; *Freelon*, 446 S.W.3d at 428. In the later factoring transactions in each case, the transfer orders ordered the original factoring company to remit to the second factoring company the part of the payment that had gone to the payee under the original transfer order. *Perez*, 2014 WL 3928590, at *4–5; *Freelon*, 446 S.W.3d at 432.

We held that the payee retained the right to assign some or all of the remaining unassigned portion of the periodic payments by directing the first factoring company to send the later-assigned portion to the second factoring company instead of the payee, and that an order approving such transaction did not conflict with the SSPA or the prior orders. *Perez*, 2014 WL 3928590, at *5–6; *Freelon*, 446 S.W.3d at 433.

That an annuitant has the right to sell unassigned payments, however, does not answer the salient issue here, which is whether the second transfer order in this case—directing Prudential, and not the first factoring company, "to deliver and make payable" to RSL the "portion of the [assigned] monthly annuity payments" remaining after subtraction of SCC's share—actually effects a transfer. In the *Wentworth* cases, the annuity issuer's obligation remained the same under both the original and later transfer orders—the only change was to the terms of the

12

servicing agreement.  *See Perez*, 2014 WL 3928590, at *1; *Freelon*, 446 S.W.3d at 429–30.  Here, however, the second transfer order required Prudential to remit a portion of certain periodic payments to RSL even though the first order required Prudential to send the entirety of each of the same periodic payments to SCC, the original factoring company.  This difference renders the *Wentworth* cases inapposite.

Among other grounds, Prudential attacked RSL's breach-of-contract claim by contending that the first order, which required it to deliver 100% of the specified monthly payments to SCC, discharged any obligation that Prudential owed to Adegoke with respect to those payments.

The April 2003 factoring agreement between RSL and Adegoke is premised on the recital that Prudential "has the continuing obligation to make the Periodic Payments to the Assignor."  That premise, however, is an incorrect recital of the parties' positions at the time.  Upon the trial court's order approving the earlier SCC agreement in January 2003, Prudential's obligation had changed with respect to the specified monthly payments: the SCC order obligated Prudential to deliver those payments to SCC.  It was SCC that had assumed the obligation to remit the unassigned portion of any annuity payments to Adegoke.  As a result, Prudential was "as to all parties except [SCC], . . . discharged and released from any and all

13

liability for the transferred payments." TEX. CIV. PRAC. & REM. CODE ANN. § 141.005(1).

The evidence conclusively proves that Prudential owed no payment obligation to Adegoke when she entered into the RSL transfer agreement. Because the second transfer order did not effectively transfer to RSL Adegoke's remaining interest in the specified periodic payments, RSL was not a "transferee" and thus, Prudential was not liable to RSL. *See id.* We hold that the trial court properly granted a directed verdict on RSL's breach-of-contract claim. This result comports with the SSPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 141.004. Any contract right RSL has against Prudential stemming from RSL's structured-settlement transfer agreement with Adegoke becomes enforceable only after it passes through a transfer order that meets the SSPA's requirements. *See id.* (admonishing that "[n]o direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order").

Before it can approve a transfer order, a trial court must find that "the transfer does not contravene any applicable statute or an order of any court or other governmental authority." *Id.* § 141.004(3). Here, the second order, on its face,

14

contravenes the first order, which required Prudential to deliver the entirety of certain payments to SCC. It also contravenes the SSPA's express proscription of any requirement that an annuity issuer "divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees." *Id.* § 141.005(4).

RSL claims that the fault for this error falls on Prudential because it was aware of the first order's terms and, as an interested party in the proceeding for approval of the second factoring agreement, Prudential should have intervened and called attention to the discrepancy before the trial court signed the second order. But the SSPA has no provision imposing this responsibility on Prudential and we decline to read one into the statute in light of its provisions designed to minimize additional cost to the annuity issuer from factoring transactions. As an applicant seeking judicial approval of the factoring agreement, RSL bears the burden to proffer evidence to support the findings necessary to approve the agreement and to obtain an order that comports with the statute.

### 2. The attorney's fees award

RSL next contends that Prudential brought an improper interpleader action as a counterclaim, and thus the trial court abused its discretion in awarding Prudential its attorney's fees. Texas interpleader law entitles an innocent stakeholder to recover its attorney's fees from the funds it deposits if it has a

15

reasonable doubt with respect to which claimant is entitled to the fund. *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964); *Heggy v. Am. Trading Employee Ret. Account Plan*, 123 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

RSL first claims that Prudential is not entitled to attorney's fees as a stakeholder because its claim is more properly construed as one for declaratory relief rather than the equitable remedy of interpleader. We disagree. An interpleader is a suit to determine a right to property held by a disinterested third party who is in reasonable doubt about ownership and who, therefore, deposits the property with the trial court to permit interested parties to litigate ownership, letting the court decide who is entitled to the funds and thereby avoiding the peril of deciding ownership itself. *FCLT Loans Asset Corp. v. FirstCity Fin'l Corp.*, 294 S.W.3d 661, 666 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Interpleader protects a stakeholder from potential exposure to rival claims. *See* TEX. R. CIV. P. 43.

Second, RSL claims that Prudential has admitted that no conflict exists among the parties as to either the amount of the assigned payments or which party is ultimately entitled to them. But RSL ignores that it was Prudential—not any of the parties to the factoring agreements—that has consistently claimed that the two transfer orders present conflicting obligations: Prudential cannot comply with one

16

without violating the other, and a violation of either order could subject it to liability if the issuing court were to enforce the violated order. The record supports the trial court's consideration of Prudential's action as one for interpleader.

We previously have endorsed the use of interpleader to reconcile conflicting court orders. *See Texaco, Inc. v. LeFevre*, 610 S.W.2d 173, 175–76 (Tex. App.—Houston [1st Dist.] 1980, no pet.). In *Texaco*, we rejected the appellee's contention that the interpleader amounted to a collateral attack on the prior judgment, noting that the stakeholder interpleaded the funds not to correct, modify, or vacate the prior judgment, but to determine their rightful owner. *Id.* at 176.

RSL further contends that Prudential is not entitled to its attorney's fees because it unreasonably delayed in depositing the interpleaded funds in the court registry. *See State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 807 (Tex. 2007). Prudential promptly complied with the requirement that it unconditionally tender the funds by bringing the interpleader action along with its answer to RSL's breach-of-contract claim; it was not required to deposit the funds absent a court order. *See Heggy*, 123 S.W.3d at 776 (explaining that "only an unconditional tender, not a deposit, is required"). The record shows that the parties spent several years attempting to negotiate a resolution to their disputes before instituting legal action. At trial, RSL admitted that it had engaged in ongoing discussions with Prudential for a long time and that they had tried to work out their differences. The

record, which contains the parties' correspondence and testimony concerning the course and tenor of their negotiations, supports the trial court's exercise of discretion in considering the interpleader. Accordingly, we hold that the trial court properly considered Prudential's request for attorney's fees as part of its relief in interpleader and acted within its discretion in concluding that any delay in interpleading the funds did not bar Prudential from receiving compensation from the interpleaded funds for its attorney's fees.

## II.    Severance

Texas Rule of Civil Procedure 41 governs severance of claims.  *See* TEX. R. CIV. P. 41.  The rule provides, in part, that "[a]ctions which have been improperly joined may be severed . . . on such terms as are just.  Any claim against a party may be severed and proceeded with separately." *Id.*  The predominant reasons for a severance are to do justice, avoid prejudice, and promote convenience.  *F.F.P. Op. Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007).  Claims are properly severable if: (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that it involves the same facts and issues.  *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990).

18

The trial court has broad discretion in the severance of causes of action, and we will reverse a severance decision only if we find an abuse of that discretion. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 734 (Tex. 1984); *see Horseshoe Operating Co.*, 793 S.W.2d at 658.

Adegoke's dispute with Rapid concerns its alleged failure to comply with the payments RSL owes to her under their factoring agreement. RSL contends that the trial court erred in severing Adegoke's claims against it from the remainder of the interpleader action because those claims are inextricably intertwined with the dispute between RSL and Prudential. As a preliminary matter, however, we note that RSL has not identified any live controversy involving Adegoke that remained when the severance occurred. *See RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, No. 01–13–00933–CV, 2014 WL 3107663, at *3 (Tex. App.—Houston [1st Dist.] July 8, 2014, orig. proceeding) (observing Adegoke did not file opposition to RSL's motion to compel arbitration and that she filed notice nonsuiting claims against RSL when she learned of motion to compel).

Furthermore, Prudential is not a party to the factoring agreement between Rapid and Adegoke. *See Transam. Occid. Life Ins. v. Rapid Settlements*, 284 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Adegoke made no claim adverse to Prudential. Pursuant to the SSPA, the SCC transfer order discharged Prudential from any liability it had to Adegoke relating to the assigned

payments.  Accordingly, we hold that the trial court acted within its discretion in ordering a severance.

## Conclusion

We hold that the trial court did not err in directing a take-nothing verdict on RSL's breach-of-contract claim.  We further hold that the trial court acted within its discretion in awarding Prudential its attorney's fees and in severing claims between Adegoke and RSL from the remainder of the suit.  We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.