COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GESPA NICARAGUA, S.A., | § | |
| Appellant, | § | No. 08-22-00244-CV |
| | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| RECOM AG, FLEXTRONICS INTERNATIONAL USA, INC., FLEXTRONICS AUTOMOTIVE USA (TEXAS), LLC, and EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., | § | of El Paso County, Texas |
| | § | (TC# 2018-DCV-4112) |
| | § | |
| Appellees. | § | |

## <u>SUBSTITUTED OPINION</u>

Appellant Gespa Nicaragua, S.A. (Gespa) and Appellee Expeditors International of Washington, Inc. (Expeditors) have filed separate motions for rehearing of our opinion issued March 20, 2024. We deny Gespa's motion for rehearing and grant Expeditors's motion. We withdraw our opinion and judgment of said date and substitute the following opinion in its place.

This appeal stems from a contract dispute involving a large purchase of solar panels intended for a solar park in Nicaragua. Gespa initially filed suit against Inabata, which is not a party to this appeal; against Flextronics International USA, Inc. and Flextronics Automotive USA (Texas), LLC, which are related companies (together, Flextronics); against Recom AG (Recom);

and against Expeditors (collectively, Appellees). Gespa's suit alleged it had contracted with Inabata to purchase premium-quality, Black Panther solar panels by Recom. But instead, it further alleged it received lesser quality panels of a different type. It further claimed the panels were fraudulently relabeled as Black Panther panels based on a scheme involving Appellees and Inabata. Gespa brought claims of fraud, fraud by nondisclosure, civil conspiracy to defraud, negligent misrepresentation, aiding and abetting, and unjust enrichment against each Appellee.

Before trial, the trial court dismissed Gespa's suit against Recom based on lack of personal jurisdiction; and against Expeditors based on enforcement of the forum-selection clause contained within Gespa's purchase agreement with Inabata. The case then proceeded to a jury trial against Flextronics, the only remaining defendant. Following a verdict, the trial court entered a take nothing judgment against Gespa. On appeal, Gespa brings issues challenging the trial court's rulings, as rendered both before and during trial. We affirm the trial court's orders.

## I. BACKGROUND

### A. The project

In 2014, Gespa entered into a framework agreement to build an electricity-generating solar park in Nicaragua. The project was generally known as "Solaris." Initially, the facility was designed to produce up to 100-megawatts of electricity. Gespa would serve as prime contractor of engineering, procurement, and construction. The role required it to design the facility, provide all specifications, and acquire all necessary equipment, materials and components. As planned, the project would be built in three phases. The first stage would produce up to 12.5 megawatts of power; the second stage would produce an additional 50 megawatts; and the third stage would produce a final 37.5 megawatts. Once completed, Gespa intended to sell the facility's produced

2

electricity. To that end, it contracted with a national company to sell electricity at a set price of $114 per megawatt for an initial, guaranteed term of 18 years.

After meeting Recom at a tradeshow in Germany, Gespa believed Recom could deliver the type of panels it wanted for the project. Recom assured Gespa it could introduce it to Inabata, a European company licensed to sell Recom's products, and Inabata in turn could extend financing to Gespa. In 2016, Inabata and Gespa signed a contract wherein Gespa would buy and Inabata would sell solar panels and other related components (the Sales Agreement). Specifically, Gespa purchased over 46,700 pieces of a specified Recom product, and related components from another supplier, for a total purchase price of more than $11 million.

To supply the Gespa's order, Inabata bought 270-watt, F-series (full monocrystalline) solar panels from Flextronics, who had acquired said panels from a bankruptcy of SunEdison. Relatedly, Inabata also obtained permission from Recom to use its trademark. Flextronics stored the reacquired panels in Expeditors's El Paso warehouse before it sold them to Inabata. Even after Inabata took title, the solar panels remained stored in El Paso. Inabata eventually sold the stored panels to Gespa and exported them to Nicaragua. While in storage, the SunEdison panels acquired from the bankruptcy were relabeled as Recom "Black Panther" panels. Recom had finalized a co-listing agreement with SunEdison's restructuring officer. Expeditors also took part in the relabeling of the panels.

The relabeled solar panels were installed in Nicaragua by MKG GmbH Montagebau Karl Gobel (MKG) as part of the first phase of the facility. Once installed, Gespa hired a company to provide a yield report to confirm the project construction was completed in accord with the plans and specifications. At this point, Gespa discovered the solar panels it acquired and installed had Recom labels placed over SunEdison labels. They also discovered the panels lacked certifications.

3

## B. The lawsuit and trial

In October 2017, Gespa filed a lawsuit in federal district court alleging Inabata, Recom, Flextronics, and MKG all engaged in a deceptive "bait-and-switch-scheme" and cover-up to pass off SunEdison panels as though they were premium-quality Recom Black Panther panels. Gespa brought three causes of action—fraudulent misrepresentation, conspiracy to commit fraud, and unjust enrichment, or alternatively, breach of contract—against all of the defendants. Additionally, against Inabata only, it alleged it had violated the federal statutory racketeering and influences law (RICO).[1] Inabata moved to dismiss the suit based on the Sales Agreement's forum-selection clause, which expressly provided for Germany as the parties' chosen forum.

In March 2018, the federal district court granted Inabata's motion to dismiss. Gespa soon filed an amended complaint, adding a RICO claim against Flextronics. Months later, however, defendants Flextronics, Recom, and MKG filed motions to dismiss challenging all claims asserted based on lack of subject matter jurisdiction and other grounds. The federal district court granted all three motions ordering that Gespa's complaint was dismissed without prejudice.

On October 31, 2018, Gespa filed its original petition and jury demand in the 120th District Court of El Paso County, again bringing claims of fraud, conspiracy, and unjust enrichment and breach of contract against Inabata, Recom, Flextronics and MKG, and as against Inabata only, it brought a RICO claim. In June 2019, Recom filed a special appearance contending it was a German corporation, with its headquarters in Dusseldorf, Germany, and it conducted no business in Texas nor did it have an office in San Francisco, California, as Gespa had alleged. It also argued it was never an owner of the products sold to Gespa, nor a customer of Expeditors's warehouse where they were stored.

---

[1] Gespa's original complaint in the United States District Court for the Western District of Texas, El Paso Division, was docketed as case number 3:17-cv-00306-PRM.

A month later, on July 8, 2019, Inabata removed Gespa's lawsuit to federal district court—where the case had earlier been dismissed without prejudice—alleging federal question jurisdiction was established based on Gespa's RICO claim brought against it. Gespa soon sought a remand back to state court, while Inabata pursued a second motion to dismiss. In December 2019, the federal district court dismissed Gespa's claims against Inabata on the basis of collateral estoppel, determining it had previously dismissed claims against Inabata based on the doctrine of forum non conveniens. Also, due to a lack of federal question jurisdiction and diversity jurisdiction, the federal district court granted Gespa's motion to remand the suit back to state court.

In October 2020, after the suit had returned to state court, Gespa amended its petition adding claims for the first time against Expeditors while otherwise maintaining like claims against Recom and Flextronics. MKG was no longer included as a defendant. After a years' time, the trial court granted Recom's special appearance. In March 2022, Expeditors filed a motion to dismiss based on the Sales Agreement's forum-selection clause, even though it was not in fact a signatory of the contract. It claimed it was entitled to enforce the clause under doctrines of equitable estoppel and as a third-party beneficiary of the agreement. In June 2022, the trial court granted Expeditors's motion to dismiss based on the Sales Agreement's forum-selection clause.

Eventually, on July 25, 2022, the case proceeded to a multi-day jury trial against Flextronics. The trial court allowed Flextronics to designate Recom, Inabata, Expeditors and MKG as responsible third parties. At the close of Gespa's case in chief, Flextronics moved for directed verdict on all claims. The trial court granted directed verdict on the claims of unjust enrichment, aiding and abetting, negligent representation, civil conspiracy, and fraud by nondisclosure, while it denied directed verdict on joint enterprise and fraud. After Flextronics closed its case in chief, the trial court additionally granted directed verdict on Gespa's joint enterprise claim. Accordingly,

only the fraud claim was submitted to the jury. When asked whether any of the following parties committed fraud against Gespa, the jury answered "No" as to Expeditors, Flextronics, and MKG, respectively, and "Yes," as to Inabata and Recom. When assigning a percentage of responsibility for damages, it answered: Recom 90% and Inabata 10%. The trial court subsequently rendered a take-nothing final judgment against Gespa and in favor of Flextronics. The final judgment stated on its face that it was final and appealable.

This appeal followed.

## II.   BRIEFING WAIVER AND ERROR PRESERVATION

Gespa presents ten issues, with multiple sub-issues included. As a preliminary matter, we first note Appellees respond with reoccurring complaints of Gespa's briefing deficiencies or its failure to preserve error at trial. *See* Tex. R. App. P. 33.1(a)(1), 38.1(i).

As for briefing deficiency, the Texas Rules of Appellate Procedure control the required contents and organization of an appellant's brief, including requiring that it contain clear and concise arguments, including appropriate citations to authority and to the record. *See* Tex. R. App. P. 38.1(h). "This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (citing *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.)). The Supreme Court of Texas has thus recognized that "[f]ailure to provide citations or argument and analysis as to an appellate issue may waive it." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015); *see also In re A.N.G.*, 631 S.W.3d 471, 476–77 (Tex. App.—El Paso 2021, no pet.) (explaining that issues "may be waived when appellant fails to provide citations, argument, or analysis" and the Court is "not required to perform research nor develop an argument for an appellant who inadequately prepares an appellate brief"). Yet, we are also

instructed by our state's highest court "to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule." *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 n.15 (Tex. 2004) (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997)). Thus, despite alleged deficiencies in Gespa's briefing, we heed the Supreme Court's instruction and reach the conclusion that it is not absolutely necessary in this case to strictly enforce the rules relating to briefing requirements. *See Mex-Tex*, 150 S.W.3d at 427; *Verburgt*, 959 S.W.2d at 616–17. As a result, we decline to hold that any of Gespa's issues on appeal are waived in their entirety by a failure to comply with the briefing requirements. *See* Tex. R. App. P. 38.1. But as for any of the sub-issues and subsidiary arguments, we will address briefing waiver individually on a case-by-case basis throughout our discussion.

Appellees also contend that many of Gespa's issues are not preserved for our review because it did not properly object in the trial court. To preserve a complaint for appellate review, a party must first present a timely request, objection, or motion to the trial court stating the specific grounds for the desired ruling if said grounds are not apparent from the context. Tex. R. App. P. 33.1(a)(1). Also, for preservation purposes, the trial court must either have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must also have objected to the court's refusal to rule. Tex. R. App. P. 33.1(a)(2). We similarly determine it will best serve our opinion to address lack of preservation of error in context, and thus we will do so within each issue where it is raised. In sum, we address Gespa's multiple issues and sub-issues to the extent we are able and to the extent necessary to reach their merits. And finally, for brevity and clarity, we reorder issues, grouping like issues together.

# III.   PRE-TRIAL RULINGS

## A.   The Special Appearance

In its first issue, Gespa challenges, on both procedural and substantive grounds, the trial court's grant of Recom's special appearance. Gespa contends Recom is subject to the jurisdiction of Texas courts.

### (1)   Standard of review

Whether a trial court may exercise personal jurisdiction over a defendant is a question of law reviewed de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "But in resolving this question of law, a trial court must frequently resolve questions of fact." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When the trial court does not issue findings of fact, as occurred here, we presume it resolved all factual disputes in favor of its ruling. *Id.*; *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). When the appellate record includes a reporter's record and clerk's record, the court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795; *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 883 (Tex. App.—El Paso 2005, pet. denied).

Initially, the plaintiff bears the burden to plead sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). This pleading requirement is "minimal" and "can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas." *Gaddy v. Fenenbock*, 652 S.W.3d 860, 871 (Tex. App.—El Paso 2022, no pet.). Once the plaintiff satisfies the initial burden, the defendant challenging

8

jurisdiction has the burden to negate all bases for personal jurisdiction and focus its arguments to allegations in plaintiff's pleading. *W. Techs., Inc. v. Omnivations II, L.L.C.*, 583 S.W.3d 786, 791 (Tex. App.—El Paso 2019, no pet.). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658.

Personal jurisdiction can be negated on either a factual or legal basis. *Id.* at 659. Factually, "the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Alternatively, the defendant may attack the legal basis for personal jurisdiction in several different ways: (1) by challenging the legal sufficiency of the jurisdictional facts; (2) by showing that its contacts do not rise to the level of purposeful availment; (3) for specific jurisdiction, by showing that the plaintiff's claims do not arise from the defendant's contacts; and (4) by demonstrating that the exercise of specific jurisdiction offends the traditional notions of fair play and substantial justice. If a nonresident defendant has presented evidence to disprove the jurisdictional allegations, the plaintiff must respond with evidence establishing personal jurisdiction over the nonresident defendant. *Id.*

### (2) Procedural arguments

Texas Rule of Civil Procedure 120a governs special appearances. It provides that "a special appearance may be made by any party . . . for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." Tex. R. Civ. P. 120a(1). A special appearance shall be made by sworn motion filed "prior to motion to transfer venue or any other plea, pleading or motion[.]" Tex R. Civ. P. 120a(1); *see also Milacron Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875 (Tex. App.—Texarkana 2008, no pet.) (recognizing this provision

promotes judicial economy). And it must likewise be heard and determined before a motion to transfer venue or any other plea or pleading. Tex. R. Civ. P. 120a(2). "This is sometimes referred to as the 'due-order-of-pleading' requirement." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004) (per curiam).

Notably, no specified time period is included in the plain language of Rule 120a, but Texas law has more specifically clarified that a special appearance is waived through participation in trial. *Milacron*, 262 S.W.3d at 875 (holding that party waived special appearance by waiting until after opening statements to file its special appearance and failing to request a hearing and secure a ruling on it before proceeding to trial on the merits). But the "issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes, shall not constitute a waiver of such special appearance." Tex. R. Civ. P. 120a(1). Even so, a party does not waive its jurisdictional challenge by seeking affirmative relief consistent with its special appearance. *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In short, a party waives its special appearance, and enters a general appearance, when it: "(1) invokes the judgment of the court on any question other than the court's jurisdiction; (2) recognizes by its acts that an action is properly pending; or (3) seeks affirmative action from the court." *Exito Elecs.*, 142 S.W.3d at 304 (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). Here, Gespa argues three procedural grounds in support of its claim that the trial court erred in granting Recom's special appearance: (1) issue preclusion; (2) undue delay; and (3) spoliation.

We consider each in turn.

### (a) Issue preclusion

Gespa first argues that issue preclusion barred Recom from challenging personal jurisdiction. It argues the federal district court failed to dismiss Recom from the suit before

10

remanding the case to state court. It contends the lack of dismissal may be viewed as the district court affirmatively exercising jurisdiction over Recom. It urges that "[i]ssue preclusion denied Recom the right to take another bite at the same jurisdictional apple." To this extent, it claims in its briefing that Recom's jurisdictional argument was "repeatedly rejected" by the federal court.

On this claim, however, Gespa cites no authorities and provides no substantive analysis. And it neither cites to the record. Based on these deficiencies, this claim of issue preclusion is not reviewable. "When an issue is inadequately briefed, and lacks a substantive analysis . . . it presents nothing for our review." *Pedroza v. Tenet Healthcare Corp.*, 555 S.W.3d 608, 612 (Tex. App.—El Paso 2018, no pet.) (citing *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010)); *see* Tex. R. App. P. 38.1(i) (a brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and the record).

Also, the record here shows the case was removed to federal district court based on the presence of federal claims brought solely against Inabata. Once those claims were dismissed on grounds of forum non conveniens, the federal district court remanded the suit back to state court noting only that all remaining claims lacked federal subject matter jurisdiction. Thus, without proper briefing or citation to the record, we cannot say that Recom's jurisdictional arguments were affirmatively or repeatedly rejected by the federal district court. We overrule Gespa's claim of issue preclusion.

### (b) Undue delay

Gespa next argues Recom waived its right to object to personal jurisdiction by waiting almost two years after the federal court had remanded the case back to State court before setting a hearing on its special appearance.

Again, we conclude that Gespa failed to develop and support its argument with authorities and record references. *See* Tex. R. App. P. 38.1(i). Even so, the record shows that Recom's first

11

pleading that was brought to a hearing of any kind was its special appearance.[2] Other than mention the number of months elapsing, Gespa makes no argument that Recom sought any substantive relief from the trial court prior to the hearing on its special appearance. Although Recom filed a motion to quash and a motion for protective order against Gespa's discovery, those motions urged that Gespa had sought discovery beyond the scope of the jurisdictional issues. Thus, Gespa only sought relief consistent with its claim that the court lacked personal jurisdiction. *See PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("A party does not waive its jurisdictional challenge by seeking affirmative relief consistent with the special appearance.").

As noted earlier, the plain language of Rule 120a does not contain a requirement that a special appearance be brought within a specified time period, and we decline to impose such a requirement here. Though many months passed while the case bounced back and forth between state and federal court, Gespa fails to establish that Recom's special appearance was not its first pleading heard by the trial court.

We overrule Gespa's claim of undue delay.

### (c) Spoliation

Gespa argues that Recom should be estopped from challenging its personal jurisdiction because it failed to cooperate with jurisdictional discovery. It contends Recom "overtly refused to answer discovery and refused to appear for a Deposition." It urges that Recom's "intentional failure to cooperate with discovery" was a spoliation tactic. In opposition, Recom asserts that any complaint by Gespa about discovery was not properly preserved for review. We agree.

---

[2] Although our record does not include a transcript of the hearing held on the special appearance, the parties do not dispute that a hearing was held.

If a party is not satisfied with an opposing party's discovery objections or responses to discovery inquiries, that party may move the trial court to compel discovery. *See* Tex. R. Civ. P. 215.1; *see also* Tex. R. Civ. P. 193.4 (providing that any party may request a hearing on an objection or claim of privilege to a discovery request). To preserve error on a discovery dispute, the appealing party must obtain a ruling by the trial court on the discovery issue. *See also* Tex. R. App. P. 33.1(a)(1)(A) (requiring, for error preservation purposes, complaint to trial court by timely request, objection, or motion stating grounds for ruling with sufficient specificity to make trial court aware of complaint and ruling on request, objection, or motion); *Epicous Adventure Travel, LLC v. Tateossian, Inc.*, 573 S.W.3d 375, 390 (Tex. App.—El Paso 2019, no pet.) (providing that obtaining a ruling or a refusal to rule, supported by objection, is an elemental requirement for preservation of error).

Here, although Gespa filed a motion to compel depositions, it does not assert, and our review of the record does not show, it similarly filed a motion as to any of the discovery inquiries. Also, it appears the trial court neither heard the motion to compel depositions nor ever ruled on it. Thus, Gespa's failure to properly object and obtain a ruling on its discovery requests waives its complaint on appeal.

Even so, we also reject Gespa's characterization of Recom's alleged actions as spoliation. Gespa's cited cases do not stand for the proposition that a nonresident defendant who objects to jurisdictional discovery should be sanctioned for spoliating evidence, and its special appearance should be denied. *See Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 490 (Tex. 2014) (holding the trial court abused its discretion in charging the jury with a spoliation instruction because any spoliation error was harmless); *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 30 (Tex. 2014) (holding the trial court abused its discretion in submitting a spoliation instruction when there was

13

no evidence the party intentionally concealed or destroyed evidence). Thus, we overrule Gespa's spoliation argument.

We turn next to consider Gespa's merits-based argument.

### (3) Merits argument

Substantively, Gespa contends that, because it affirmatively alleged that Recom did business in Texas, it met minimal pleading requirements to confer personal jurisdiction over it. It maintains the burden then shifted to Recom to affirmatively negate all bases of jurisdiction. Ultimately, it argues that Recom failed to meet its evidentiary burden.

### (a) Applicable law

Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal due-process guarantees. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). The Texas long-arm statute broadly permits jurisdiction over a nonresident doing "business in this state" if the nonresident "commits a tort in whole or in part in this state[.]" Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). Thus, allegations that a tort was committed in Texas will generally satisfy the requirements of the long-arm statute. *Moncrief Oil*, 414 S.W.3d at 149. However, such allegations must also satisfy federal due-process requirements. *Moki Mac*, 221 S.W.3d at 575. Texas courts interpret the long-arm statute to "reach as far as the federal constitutional requirements of due process will allow." *Id*. (quoting *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

To satisfy said requirements, personal jurisdiction may be exercised over a nonresident defendant only if two requirements are met: (1) the defendant has "minimum contacts" with the forum state, and (2) the exercise of jurisdiction will not offend "traditional notions of fair play and

substantial justice." *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Moki Mac*, 221 S.W.3d at 575. A nonresident establishes minimum contacts when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac*, 221 S.W.3d at 575. That is, the in-state activities support "a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Old Republic*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Even so, three important considerations guide a review of a nonresident's contacts with the state: (1) "only the defendants' contacts with the forum are relevant, not the unilateral activity of another party or a third person"; (2) "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and" (3) "the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction." *Id.* (quoting *Moncrief Oil*, 414 S.W.3d at 151).

If established, minimum contacts with the forum state may give rise to either general or specific jurisdiction. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). A court has general jurisdiction over a nonresident defendant whose "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *TV Azteca*, 490 S.W.3d at 37 (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). By contrast, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021). The minimum contacts necessary for specific jurisdiction are established if the defendant purposefully avails itself of the privilege of conducting activities in the forum state and the suit arises out of or relates to the defendant's contacts with the forum. *Moki Mac*, 221 S.W.3d

15

at 575–76. More particularly, however, the defendant's forum contacts must be substantially connected to the operative facts of the litigation. *Id.* at 585.

Even when minimum contacts with a state are in fact established, the second prong of the due process inquiry requires further proof that an exercise of jurisdiction over the nonresident defendant comports with "traditional notions of fair play and substantial justice." *TV Azteca*, 490 S.W.3d at 55 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemp. Comp. & Placement*, 326 U.S. 310, 316 (1945); *Moncrief Oil*, 414 S.W.3d at 154). Under this requirement, courts must consider several factors to evaluate the fairness and justness of exercising jurisdiction over a nonresident defendant:

> (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies.

*Id.* at 55 (citing *Moncrief Oil*, 414 S.W.3d at 155). Also, when a defendant is a citizen of a foreign country, and not just another state, we consider additional factors to include:

> (6) the unique burdens placed upon the defendant who must defend itself in a foreign legal system; (7) the state's regulatory interests; and (8) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies.

*Id.* (quoting *Guardian Royal Exch. Assur.*, 815 S.W.2d at 229). A nonresident defendant may defeat jurisdiction by presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Id.* (quoting *Spir Star AG*, 310 S.W.3d at 879).

### (b) Analysis

At the trial court level, Gespa did not contest Recom's claim that it lacked general jurisdiction in Texas, nor does it challenge the claim on appeal. Therefore, our jurisdictional inquiry is confined to specific jurisdiction only. *See* Tex. R. App. P. 47.1.

In Gespa's amended petition, it alleged that Recom had an office in San Francisco, California, and it "intermediated a transaction" between co-defendants that were Texas entities. Furthermore, Gespa asserted that Recom made false representations and committed fraud against it. Assuming Gespa met its initial pleading burden, which is recognized as a minimal requirement, we focus our inquiry on whether Recom negated Gespa's allegations of jurisdictional facts. *See Omnivations*, 583 S.W.3d at 791; *see also Gaddy*, 652 S.W.3d at 871 (stating the pleading requirement is "minimal" and "can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas").

Recom submitted a declaration asserting under penalty of perjury that it had no office in the United States, nor any employees working in the United States. Instead, Recom averred it was a German corporation with its headquarters in Dusseldorf. And more specifically, Recom denied having any offices, employees, personal property, or real property in Texas. Recom contended the agreement between Recom and Inabata was executed in Germany and no employees relabeled any panels or otherwise met with Flextronic employees in Texas. Recom asserted it never owned any of the solar panels that were purchased by Gespa. Rather, it avers that Inabata bought the panels directly from Flextronics, then sold them to Gespa. As a result, it urges that Inabata was the customer of the El Paso warehouse owned by Expeditors, not Recom. At most, then, it contends that Recom merely authorized Inabata's use of its trademark on the solar panels sold to Gespa.

Gespa contends Recom failed to negate alleged jurisdictional facts because the record undisputedly established it had continuous and systematic contacts with Texas for over a year via its agreement with Flextronics and Expeditors, and those Texas-based contacts were a direct cause of harm to Gespa. In support, Gespa asserts the evidence established the following events or activities: (1) that Recom entered into a contract with Flextronics, a Texas company, regarding the

17

sale of solar panels; (2) that Recom received a commission for selling such products in Texas; (3) that Recom was responsible for intermediating the transaction between Inabata and Flextronics regarding the purchase of solar panels; (4) that Recom negotiated the price for storage for the warehouse and for relabeling the panels in Texas; (5) that Recom coordinated with Expeditors to ship the panels from Texas to other parts of the world; and (6) that Recom communicated daily with Expeditors throughout the process.

We first consider whether Recom's agreement with Flextronics and Expeditors, and activities related thereto, established Recom had purposefully availed itself of the privilege of conducting activities in Texas such that it invoked the benefits and protections of the state's laws. Ordinarily, contracting with a Texas resident by itself is insufficient to subject a nonresident defendant to jurisdiction in Texas. *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 908–909 (Tex. App.—Austin 2000, pet. denied) (citing *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 478 (1985)). Rather, there must also be evidence demonstrating the contract was to be performed in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1). Here, there is no allegation that Recom's agreement was negotiated in Texas nor mention of it requiring performance in Texas. Moreover, the record lacks any evidence that Recom sought to invoke the benefits and protections of Texas's laws in any of its course of conduct. *Info. Servs. Group, Inc. v. Rawlinson*, 302 S.W.3d 392, 400 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding it is insufficient to establish purposeful availment when a nonresident defendant contracted with a Texas company when there is no allegation of acts constituting a breach of the contract in Texas or allegations that the contract required the nonresident defendant to conduct activities in Texas).

Moreover, evidence of daily phone calls with Expeditors, while Expeditors itself was located in Texas, is insufficient to show purposeful availment. *Old Republic*, 549 S.W.3d at 560

18

("When communications between a nonresident and a resident are alleged as the basis for jurisdiction, we look to the quality and nature of the communications to establish purposeful availment."). Absent evidence that Recom ever sought a benefit, advantage, or profit from the daily communications, these contacts are insufficient to constitute purposeful availment. *See id.*

Next, the allegations related to negotiating the price for storing the panels in Texas, negotiating the price for relabeling the panels in Texas, and shipping the panels out of Texas to other parts of the world are too fortuitous to confer jurisdiction. Such allegations were unsupported with any evidence establishing that Recom itself used the El Paso warehouse or that it purposefully selected Texas to gain a benefit from the forum. *See Moncrief Oil*, 414 S.W.3d at 151 ("First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.").

Even if we accept as true Gespa's alleged facts, the asserted minimum contacts do not establish Recom's purposeful conduct sufficient to establish jurisdiction over it. Thus, we conclude the trial court did not err in granting Recom's special appearance; and to the extent Gespa claims the trial court erred in dismissing Recom with prejudice, we further conclude Gespa's complaint was not preserved for our review.[3] *See* Tex. R. App. P. 33.1(a)(1).

---

[3] Brought for the first time in its reply brief, Gespa asserts that the trial court erred in dismissing its claims against Recom "with prejudice." However, Gespa neither raised this issue in the trial court nor assigned error to it by its opening brief. *See* Tex. R. App. P. 33.1(a)(1) (stating a party cannot raise for the first time on appeal an issue that was not presented to the trial court by way of a timely request, motion, or objection); Tex. R. App. P. 38.1(f); *see also McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 755 (Tex. App.—Dallas 1993, no writ) (finding complaint that dismissal of case with prejudice was not appropriate sanction was not preserved for appellate review because it was not raised in trial court); *Andrews v. ABJ Adjusters, Inc.*, 800 S.W.2d 567, 568–69 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (op. on reh'g) (holding that appellant failed to preserve complaint that trial court improperly dismissed claim "with prejudice" by not presenting alleged error first to the trial court). Accordingly, we conclude that Gespa failed to preserve this portion of its complaint for our review.

19

We overrule Gespa's first issue.

## B   The Forum-Selection Clause

In its second issue, Gespa contends the trial court erred in dismissing Expeditors based on the Sales Agreement's forum-selection clause.

Gespa added Expeditors as a named defendant on October 22, 2020, or nearly two years after it originally filed its suit. On March 24, 2022, Expeditors filed its motion to dismiss based on a forum selection clause contained in the Sales Agreement entered between Gespa and Inabata. The forum-selection clause reads as follows:

> The Parties hereto agree that the law of Germany shall apply, and voluntarily submit to jurisdiction and venue in the courts of Dusseldorf is agreed as the exclusive place of jurisdiction (venue) for any and all disputes which may arise out of this Agreement or in connection herewith.

Enforcing Gespa's agreement to litigate all disputes arising under the contract in Germany, the trial court granted Expeditors's motion and dismissed Gespa's claims against Expeditors.

In three grounds, Gespa contends on appeal that the trial court erred in dismissing its claims against Expeditors based on the following contractual and equitable theories: (1) that Expeditors was estopped from disavowing the underlying Texas state court after it availed itself of the benefits of litigating in the forum; (2) that no agreement containing a forum-selection clause existed between Gespa and Expeditors, and Expeditors neither qualified as a third-party beneficiary of the Sales Agreement; and (3) that public policy disfavors dismissal of Expeditors from the suit.

We reorder these grounds so as to first address whether Expeditors can enforce the Sales Agreement as a non-signatory of the contract.

### (1)   Standard of review

Ordinarily, we review for an abuse of discretion a motion to dismiss predicated on a forum-selection clause. *See In re Lyon Fin. Services, Inc.*, 257 S.W.3d 228, 231 (Tex. 2008) (per curiam).

20

But when the dismissal centers on the interpretation of the clause as part of a contract, we review the trial court's interpretation de novo. *Sullivan v. Microsoft Corp.*, 618 S.W.3d 926, 930 (Tex. App.—El Paso 2021, no pet.). In doing so, we interpret unambiguous clauses according to their plain language under contract interpretation principles. *Alattar v. Kay Holdings, Inc.*, 485 S.W.3d 113, 119 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

### (2) Applicable law

Parties preselect their dispute resolution mechanisms, to some extent, by including a forum-selection clause in their contracts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). In Texas, these clauses are "generally enforceable and presumptively valid." *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *see Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020). Even so, they are subject to public-policy constraints. *Pinto Tech*, 526 S.W.3d at 432.

Questions sometimes arise over who may benefit or be bound to a forum-selection clause, and whether a claim falls within the scope of the clause. In resolving these disputes, courts are not only guided by federal law, but also by drawing analogies to arbitration case law, as such clauses are generally recognized as "a specialized kind of forum-selection clause." *Pinto Tech*, 526 S.W.3d at 437 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, (1974)); *In re AIU Ins. Co.*, 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding). As to both clause-types, parties may benefit or be bound only under recognized contract or agency principles. *In re Western Dairy Transp.*, L.L.C., 574 S.W.3d 537, 545 (Tex. App.—El Paso 2019, no pet.) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (recognizing contract and agency theories may bind non-signatories to arbitration agreements)).

As a general rule, neither an arbitration clause nor a forum-selection clause may be invoked by a nonparty to the contract. *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015); *Garg v. Pham*, 485 S.W.3d 91, 105 (Tex. App.—Houston [14th Dist.] 2015, no pet.). But exceptions to that rule are recognized, permitting nonparties to enforce such clauses when criteria is met. *See G.T. Leach Builders*, 458 S.W.3d at 524; *see also Kellogg*, 166 S.W.3d at 739 (listing six recognized theories that may bind nonparties with parties: "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary"). Ultimately, we must determine the intent of the parties as expressed in the terms of the agreement by applying ordinary principles of state contract law to determine whether nonparties may enforce the forum selection clause. *G.T. Leach Builders, LLC*, 458 S.W.3d at 524.

Here, Expeditors argued multiple theories under which Expeditors could enforce the forum-selection clause as a non-signatory of the contract: (1) equitable estoppel (based on both direct-benefits estoppel and concerted misconduct); (2) collateral estoppel; and (3) that it qualified as a third-party beneficiary under the terms of the contract given it falls in the category that includes "assistants of Inabata." Because it is dispositive, we begin with Expeditors's first claim, which asserts entitlement to the contract's forum-selection clause based on direct-benefits estoppel.

### (3) Direct-benefits estoppel theory

There is no dispute that Expeditors is a nonsignatory to the Sales Agreement between Gespa and Inabata. However, being a nonsignatory does not necessarily foreclose application of that contract's forum selection clause to Gespa's claims against Expeditors. As the Texas Supreme Court has observed in the arbitration context, "sometimes a person who is not a party to the agreement can compel arbitration with someone who is. . . ." *Meyer v. WMCO–GP, LLC*, 211

S.W.3d 302, 305 (Tex. 2006) (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761–62 (Tex. 2006) (orig. proceeding) (per curiam)). A person who has agreed to resolve disputes with one party in a particular forum may be required in some circumstances to resolve related disputes with other parties in the same forum. *See In re Trammell*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, orig. proceeding) (citing *Meyer*, 211 S.W.3d at 304). This results from application of certain equitable principles. *Id*. at 820–21.

For example, direct-benefits estoppel allows a nonsignatory to enforce a contract against a contract signatory. As analogously applied to arbitration, "[a] non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims." *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 831 (Tex. App.—Dallas 2013, no pet.). This estoppel applies when "each of a signatory's claims against a nonsignatory references or presumes the existence of the written agreement." *In re Trammell*, 246 S.W.3d at 821. In such case, it can be said that the signatory's claims "arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* For sure, "[w]hen a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims." *Id*. Said differently, "[t]he claim must 'depend on the existence' of the contract and be unable to 'stand independently' without the contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015) (internal citations omitted). That is, the alleged liability must "arise[] solely from the contract or must be determined by reference to it." *Weekley Homes*, 180 S.W.3d at 132.

Here, Expeditors, a nonsignatory, seeks to enforce the Sales Agreement's forum selection clause against Gespa, a signatory, based upon direct-benefits estoppel. By its allegations against

Expeditors, Gespa asserted a claim of fraud against Expeditors and alleged Expeditors "conceived a plan to further [Inabata's and Recom's] fraudulent scheme," whereby it placed a Recom label over the SunEdison labels of the purchased solar panels. Gespa alleged Expeditors relabeled the panels with the intent that Gespa would rely upon the new labels and accept the delivered panels as genuine Recom panels. Additionally, Gespa asserted Expeditors made material misrepresentations by relabeling the panels and creating false and fraudulent data related thereto. Gespa urged these misrepresentations harmed it because it relied on each false statement made to it.

In considering the nature of the claim against Expeditors, Gespa's allegations necessarily presume the existence of the Sales Agreement itself because the fact of whether Expeditors made false representations concerning the type of solar panels it stored depended entirely on the type of panels Gespa had contracted to receive. The allegation that Expeditors fraudulently relabeled the panels does not stand alone, but rather, it exists only with the understanding that Gespa contracted to buy a certain type of solar panel under its contract with Inabata. The allegation that Expeditors fraudulently changed the labels affixed to the panels depends on the claim that Gespa did not receive the type of solar panels it contracted to receive by the terms of the Sales Agreement.

In sum, Expeditors asserts that Gespa cannot prove its fraud claims against it without necessarily referencing the express terms of the contract with Inabata. On this point, we agree. Accordingly, the Sales Agreement containing the forum-selection clause does include terms on which Gespa must rely to pursue its claims against Expeditors because the relabeling allegation is otherwise irrelevant unless Gespa first establishes it contracted to purchase Black Panther panels supplied by Inabata. And here, that contractual right on which Gespa relies comes directly from the terms of the Sales Agreement on which Gespa must rely to prosecute its claims. *See In re*

24

*Trammell*, 246 S.W.3d at 821 (citing *Meyer*, 211 S.W.3d at 306, and *Grigson*, 210 F.3d at 527); *Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Accordingly, because the claims against Expeditors presumes the existence of the Sales Agreement, the circumstances here meet the criteria for allowing Expeditors to enforce that agreement's forum-selection clause against Gespa based upon a theory of direct-benefits estoppel. Thus, because we conclude the trial court could have granted Expeditors's motion to dismiss on this theory alone, we need not address any of the other theories presented by Expeditors. *See* Tex. R. App. P. 47.1. (providing that a court of appeals must hand down a written opinion that is as brief as practicable but yet still addresses every issue raised and necessary for a final disposition of the appeal).

### (4)   Waiver

Having concluded that Expeditors has a right to enforce the forum selection clause under a direct-benefits estoppel theory, we turn next to consider whether the right was otherwise waived. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding) (providing that—"like other contractual rights"—a forum-selection clause may be waived, and it would ordinarily be "unreasonable or unjust" for a court to enforce a forum-selection clause after it has been waived).

"A party waives a forum-selection clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Id* at 713 "Whether litigation conduct is 'substantial' depends on context and is determined on a case-by-case basis from the totality of the circumstances." *Id*. Substantial invocation and resulting prejudice must both occur to waive the right. *Perry Homes v. Cull*, 258 S.W.3d 580, 592–93 (Tex. 2008). In determining whether a right

has been waived, the Supreme Court has described that "the precise question is not so much when waiver occurs as when a party can no longer take it back." *Id.* at 595.

Gespa argues that Expeditors extensively availed itself of the benefits of the underlying Texas forum such that it could no longer demand a dismissal based on a change of forum. To demonstrate substantial invocation of the judicial process, it points to the extent of the litigation conduct, highlighting that Expeditors engaged in extensive discovery including the taking of numerous depositions; it filed a motion to exclude experts; it agreed to scheduling orders; it participated in court ordered mediation; and it filed multiple, unsuccessful motions for summary judgment. Based on the totality of this conduct within a Texas forum, Gespa argues that Expeditors waived its right to enforce the contract's forum-selection clause.

Expeditors acknowledges that it did not seek to enforce the forum-selection clause until March 24, 2022, or approximately 17 months after it was first brought into the lawsuit as a named defendant. But it urges that the record also shows it sought to enforce the forum-selection clause only two months after it learned of its existence. Expeditors maintains it first learned of the clause during the deposition of Gespa's corporate representative on January 20, 2022. During that deposition, Nygart testified to the contractual right by stating: "we know for sure that we have a contract with Inabata that pertains to Germany, because it's a German jurisdiction, that we have to—where we have to address whatever we have pertaining to the contract in Germany." Immediately following, after learning of this contractual term, Expeditors supplemented its responses to discovery, amended its answer, and filed its motion to dismiss based on its enforcement of the forum-selection clause. Expeditors explains it lacked earlier knowledge of the clause because Gespa had pleaded around the Sales Agreement and did not attach a copy to its petition when it joined Expeditors as a party to the suit. In short, Expeditors argues it moved to

enforce the clause shortly after it learned of its existence, and it did not intentionally waive it through its litigation conduct.

Based on the record and arguments, the trial court concluded that any delay on Expeditors's part was reasonable and found against waiver. Deferring to the trial court's factual findings, as we must, we conclude the *Perry* factor considering delay weighs against waiver. And as for other factors considered, although Expeditors did participate in litigation, we cannot say it substantially availed itself of the benefits of the forum once it learned of the existence of the forum-selection clause. *See In re Nationwide Ins.*, 494 S.W.3d at 713 (noting that "[w]hether a party has substantially invoked the judicial process is a question of degree judged from the totality of the circumstance"). Moreover, the test for waiver is one similar to estoppel. It is "a defensive theory barring parties from asserting a claim or defense when their representations have induced 'action or forbearance of a definite and substantial character' and 'injustice can be avoided only by enforcement.'" *Id.* at 714 (quoting *Perry Homes*, 258 S.W.3d at 593). Given that Expeditors moved to enforce the forum-selection clause only a few months after learning of its existence, we conclude that Gespa has failed to show the trial court abused its discretion by rejecting its claim that Expeditors impliedly waived the forum-selection clause by substantially invoking the judicial process to Gespa's detriment or prejudice. We overrule Gespa's second issue.

## IV. TRIAL RULINGS

### A. The directed verdict

In its third issue, Gespa contends the trial court erred in granting a directed verdict on its claim of fraud by nondisclosure, which it had asserted against Flextronics.

### (1) Standard of review

We review de novo the trial court's grant of a directed verdict. *JPMorgan Chase Bank, N.A., v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). In doing so, a directed verdict is reviewed under the same legal-sufficiency standard that applies to no-evidence summary judgments. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When responding to a motion for directed verdict, the nonmovant bears the burden of identifying evidence raising a genuine issue of material fact as to each challenged element of its cause of action. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). We may affirm a directed verdict on any ground that supports it. *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

### (2) Analysis

Gespa argues that, prior to trial, Flextronics filed a no-evidence motion for summary judgment on the fraud by nondisclosure claim, and the trial court denied the motion. And during its case-in-chief at trial, it claims it presented evidence establishing that Flextronics not only made false statements to it, but also the labels affixed to the solar panels contained false statements and false certifications. In briefing the issue, however, Gespa neither addresses the individual elements of fraud by nondisclosure, nor does it provide analysis highlighting the nature and extent of evidence of record raising a genuine issue of material fact on the fraud by nondisclosure claim. *Boerjan*, 436 S.W.3d at 310. A party asserting error on appeal bears the burden of showing the record supports the contention raised, and of specifying the place in the record where matters upon

28

which it relies or on which it complains are shown. *See* Tex. R. App. P. 38.1(h). On this issue, we conclude that Gespa failed to carry its burden on appeal. *See id.*

We overrule Gespa's third issue.

### B. The trial court's evidentiary rulings

In its fourth and fifth issues, Gespa challenges the trial court's evidentiary rulings during trial to the extent it admitted spliced-video testimony while excluding relevant evidence.

#### (1) Standard of review

Evidentiary rulings are reviewed for an abuse of discretion. *Cent. Texas Water Supply Corp. v. Kempner Water Supply Corp.*, 645 S.W.3d 799, 815–16 (Tex. App.—El Paso 2022, pet. denied) (citing *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012)). A trial court abuses its discretion when it rules "without regard for any guiding rules or principles." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). "An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). An appellate court should not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *Id.* (citing Tex. R. App. P. 44.1). A party asserting that a trial court's evidentiary ruling should be reversed must show: (1) the trial court erred in admitting or striking evidence; (2) the error was regarding evidence that was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case. *See Hall v. Domino's Pizza, Inc.*, 410 S.W.3d 925, 929 (Tex. App.—El Paso 2013, pet. denied) (citing *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)).

#### (2) Admission of evidence

Gespa's fourth issue argues the trial court erred by allowing Flextronics to introduce a purportedly "spliced video" of deposition testimony without hearing objections. Gespa contends

it timely objected to deposition questions, to the extent necessary, in accord with Rule 199.5(e) of the Texas Rules of Civil Procedure. Yet, at trial, when it learned that Flextronics's method of editing to streamline the video presentation altered or changed the order of the deposition, it timely raised its objection to the trial court. Gespa argued in the court below that it had planned on objecting live while the video played to the jury, but it could no longer do so because it could not track the video with the deposition transcript. The trial court advised that Gespa had an obligation to timely file written objections to any party's designation and to bring them to the court's attention. On appeal, Gespa argues the court's ruling deprived it of its opportunity to raise objections to the "spliced video," and to seek a ruling from the court. In short, Gespa contends it was denied procedural due process.

In a series of responses, Flextronics argues first that it had every right to arrange the video deposition testimony in the way that made the most sense for the presentation of its case; second, that it timely filed a designation of deposition excerpts informing Gespa of testimony it planned to use during trial; third, that Gespa was given the same opportunity as all other parties to designate and object to deposition testimony; fourth, that Gespa failed to timely raise objections for several days prior to Flextronics's playing of the video for the jury; fifth, that even at trial, Gespa failed to obtain a ruling on its objections; and finally, that Gespa still has not specified which objections it seeks to raise about video testimony, nor how admission of such testimony caused the rendition of an improper judgment.

The record shows that, on July 25, 2022, or the morning of the first day of trial, Flextronics filed its written notice of deposition excerpts. As for its witness, Spiros Corcokios, the designation included page and line references from the deposition taken on October 26, 2021. After eight days

30

of trial, when Flextronics called Corcokios to testify by video deposition, and the video played for three and a half pages of transcript, Gespa's counsel objected, and a bench conference ensued.

The trial court asked counsel to clarify whether it objected that deposition objections had been taken out of the edited video. Gespa's counsel responded that he objected procedurally that he had not had an opportunity to fully review the video as to how it was prepared for the jury. He stated as follows:

> It's one thing to take the video and take out the objections. But when you couple that with the fact that they have rearranged--wrong word--they have changed the--gotten rid of sections to purportedly streamline it, that has changed the order of which--changed the manner in which its being presented from the manner in which I understood based on their disclosure it would be presented--if that makes sense.

Flextronics's counsel interjected that the parties had been ordered to exchange objections. He asserted he did not receive objections from Gespa after he sent his objections. Instead, to streamline the process, Gespa asked for it to be allowed to object live while the video played during the trial.

Rejecting the request, the trial court made it clear that once Flextronics had filed its designations, it was then incumbent on Gespa to object in writing and bring objections to the court's attention for a ruling. The trial court also rejected Gespa's complaint that witness designations were made late. The trial court offered extra time in between each side's presentation but it nonetheless stressed that no objections were brought to its attention regarding the designations made. The court reiterated that Gespa could not obtain live rulings on objections it had otherwise failed to make by bringing them to the court's attention even as recently as that very morning before trial had begun. On that point, the bench conference concluded, and the video deposition continued playing to the jury.

After four pages of transcript continued, Gespa's counsel objected and asked to approach the bench. When the trial court asked if the objection was similar, counsel responded that he had additional information he thought might be helpful. At the bench, Gespa's counsel asserted:

> I'll just be brief, just so the record is clear. We did file--when we cross-designated--and we identified the form of the objections that we had to these various issues. And so it was my understanding--and maybe I was wrong--but it was my understanding that I did preserve the issue of the objections to these questions as we're going through. Because as we're seeing, a lot of these questions were just flat out leading, asking for various answers. So it was my intention to preserve that objection and I did actually file this over the weekend with the objections highlighted. And so if I somehow waived my objection, that was certainly not my intent, but my intention was to preserve it.

After the trial court noted Gespa's complaint, it permitted Flextronics to continue with playing the video for the jury. The video played uninterrupted for another twenty pages of the reporter's record. Upon its conclusion, the trial court asked whether Gespa's counsel wanted additional time before it made its presentation. After Gespa responded affirmatively, the court recessed for the day. The next morning, Gespa presented its cross-excerpts from the same deposition by reading questions and answers from the deposition transcript.

On appeal, Gespa generally contends the trial court deprived it of procedural due process by not allowing it to present live objections, and obtain corresponding rulings, pertaining to the excerpted video testimony of witness Corcokios.

On this issue, we conclude that Gespa failed to preserve error at trial; and still, on appeal, it failed to demonstrate how purported error probably caused the rendition of an improper judgment. First, the record here shows that Gespa failed to identify at trial which portions of the deposition testimony it found objectionable based on specific objections it raised. *See* Tex. R. App. P. 33.1 Second, it failed to show on appeal how the court's admission of purportedly, unidentified

testimony probably caused rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *Malone*, 972 S.W.2d at 43. Accordingly, for these reasons, we overrule Gespa's fourth issue.

### (3) Exclusion of evidence

In its fifth issue, Gespa argues the trial court erred by excluding two types of evidence. First, it complains of the exclusion of testimony from Edmond J. Martin, one of its experts. Second, it complains of the exclusion of evidence showing lost profit damages pertaining to the remaining two phases of the project, which were each identified as Phase II and III.

### (a) Expert testimony

First, Gespa contends the trial court erred in excluding its expert, Edmond J. Martin. Assuming without deciding that the exclusion was erroneous, Gespa nevertheless failed to make a showing of resulting harm. On appeal, Gespa focuses on its showing of good cause for its late designation, urging there was no unfair surprise or unfair prejudice. However, in bringing its challenge, it fails to identify how the exclusion of its expert probably resulted in an improper judgment. *See Alvarado*, 897 S.W.2d at 753 ("A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment, i.e., that, considering the entire record, "the judgment turns on the particular evidence excluded or admitted."). In failing to address harm, we conclude that Gespa failed to meet its burden on appeal. *See id*. Thus, to this extent, we overrule in part its fifth issue.

### (b) Damages

In the remaining part of its fifth issue, Gespa claims the trial court erred in refusing to admit evidence of damages resulting from the loss of the other two phases of the project, Phases II and III. Gespa argues it preserved error by its proffer of proof at trial. The record shows that Gespa in

fact made a proffer of evidence of lost profit damages outside the presence of both the jury and the court.

In its briefing on appeal, Gespa claims its offer of proof states conclusively the damages it sustained from lost profit damages attributable to the loss of completion of Phases II and III. Beyond a bare conclusory statement, Gespa provides no legal support nor argument with citation to authorities in support of its claim. Tex. R. App. P. 38.1(i). Moreover, lost profits must be proven with reasonable certainty. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998) ("Under the benefit-of-the bargain measure, lost profits on the bargain may be recovered if such damages are proved with reasonable certainty." (citing RESTATEMENT (SECOND) OF TORTS § 549(2) (1977))). Last, Gespa only challenges exclusion of evidence related to Phase II and III damages without addressing the trial court's directed verdict, which precluded the recovery of the same damages. *See* Tex. R. App. P. 33.1.

For these reasons, we conclude Gespa failed to show the trial court abused its discretion in excluding evidence on its claim for lost profits for Phases II and III. Thus, we overrule the remaining part of Gespa's fifth issue.

## C. The jury charge

In issues six, seven, and eight, Gespa contends the trial court erred in refusing to submit jury questions for causes of action on which the trial court had granted directed verdict (i.e., joint enterprise, aiding and abetting, and conspiracy). While Gespa's ninth issue challenges the trial court's omission of a jury question on agency. Unlike issues six, seven, and eight, the trial court did not grant a directed verdict on Gespa's agency theory. But it did rule that it would not submit an agency question to the jury, nor would it permit Gespa to argue agency as a disputed factual issue. Finally, in its tenth issue, Gespa contends the trial court improperly submitted a question on responsible third parties to the jury.

We address these issues in two parts. First, we address the charge question regarding claims on which the trial court granted directed verdict separate from the one it did not. Second, we consider whether the trial court erroneously submitted responsible third parties to the jury.

### (1) Standard of review

"We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard." *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012) (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). The trial court has considerable discretion to determine proper jury instructions, and "[i]f an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998) (per curiam). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009). An appellate court will not reverse a judgment for an error of law unless it concludes the error complained of: (1) "probably caused the rendition of an improper judgment;" or (2) "probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a). "Charge error is generally considered harmful if it relates to a contested, critical issue." *Hawley*, 284 S.W.3d at 856.

### (2) Applicable law

Rule 278 of the Texas Rules of Civil Procedure provides that a trial court "shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. It is true that "[i]f an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995).

### (3) Analysis

#### (a) Claims resolved by directed verdict

As stated earlier, the trial court resolved Gespa's claims of joint enterprise, aiding and abetting, and conspiracy all by rendering directed verdict against Gespa. By doing so, these claims were eliminated from the pleadings before they even had a chance to go to the jury. The trial court's directed verdict resulted in no duty to provide a jury charge on the claims. *See Salazar v. Sanders*, 440 S.W.3d 863, 873 (Tex. App.—El Paso 2013, pet. denied). Charge error and directed verdict error are two separate issues triggered by separate judicial rulings, which are reviewed under separate standards of review. *Id*. That is, a challenge to a jury charge ruling does not encompass a challenge to a trial court's grant of directed verdict. That issue must be raised separately. *Salazar*, 440 S.W.3d at 873; Tex. R. App. P. 38.1(f).

Yet, even if we construed Gespa's issues as challenging the directed verdict rendered against these claims, Gespa failed to carry its burden to show what evidence was before the trial court that raised a genuine issue of material fact to support their required elements. *Boerjan*, 436 S.W.3d at 310. To illustrate, we address each claim individually, and in turn.

#### (b) Joint enterprise

The essential elements of joint enterprise are: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Salazar v. Ramos*, 361 S.W.3d 739, 751–52 (Tex. App.—El Paso 2012, pet. denied).

First, Gespa assumes that the trial court granted directed verdict based on Flextronics's argument that an intentional tort cannot be the underlying claim for joint enterprise. Gespa claims this was in error because the Supreme Court of Texas only limited joint enterprise claims to those

36

that have a business or pecuniary interest. We conclude it is not necessary to address this issue because it was not the only theory argued to the trial court and we may affirm a trial court's directed verdict on any ground that supports it. *Prudential Ins.*, 470 S.W.3d at 136; *Breezevale Ltd.*, 82 S.W.3d at 443. Moreover, Gespa fails to meet its burden of showing the record supports the contention raised, and of specifying the place in the record where matters upon which it relies or on which it complains are shown. *See* Tex. R. App. P. 38.1(h). Rather, it merely states the following: "Gespa succeeded in proving its underlying fraud claim[,] . . . [t]herefore, based upon Texas law, the trial court erred in dismissing Gespa's theory of liability based upon joint enterprise." Lacking record references, we conclude this conclusory argument is insufficient to overcome directed verdict. *Boerjan*, 436 S.W.3d at 310.

### (c) Aiding and abetting

The Supreme Court of Texas "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017). Even so, Gespa and Flextronics both acknowledge there are three "types" of aiding and abetting conduct: concert action, assisting and participating, and assisting and encouraging. Here, Gespa presents an argument for each by conclusively stating "[t]here is evidence in the record to support imposition of joint and several liability[.]" Despite this claim, we are not required to search through the record for facts supporting Gespa's position. *See Slagle v. Prickett*, 345 S.W.3d 693, 702 (Tex. App.—El Paso 2011, no pet.) (recognizing that, without guidance, appellate courts are not required to search a record to determine whether assertions regarding facts or theories are valid); *see also* Tex. R. App. P. 38.1. We conclude Gespa failed to meet its burden to overturn directed verdict on aiding and abetting. *Boerjan*, 436 S.W.3d at 310.

### (d) Conspiracy

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Here, Gespa contends there is evidence in the record to impose liability based on conspiracy. Without proper support to the record, we conclude Gespa failed to meet its burden to overturn the directed verdict on conspiracy. *See Slagle*, 345 S.W.3d at 702; *see also* Tex. R. App. P. 38.1; *Boerjan*, 436 S.W.3d at 310.

For all of these reasons, we overrule Gespa's sixth, seventh, and eighth issues.

### (e) Agency theory

In its ninth issue, Gespa challenges the trial court's omission of a jury question on agency. Gespa contends the trial court refused to allow Gespa to elicit testimony or present argument on whether Recom was acting as an agent for Flextronics. Flextronics responds arguing the question of agency was never before the trial court because Gespa failed to assert agency in its pleadings. Unlike issues six, seven, and eight, the trial court did not grant directed verdict on this theory. Instead, it ruled it would not submit a question on agency to the jury nor allow Gespa to elicit testimony referencing this claim.

It is within the trial court's discretion to submit questions to the jury. *See Thota*, 366 S.W.3d at 687. The trial court "shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. Here, Gespa does not contest the court's ruling that it failed to expressly assert agency in its live pleadings. However, it contends that its pleadings provided fair notice of an agency theory by its allegation that: "Flex[tronics] then entered into a Sales Representative Agreement with [Recom]." At trial, Flextronics objected to questions referencing an agency relationship and inclusion of an

agency question in the jury charge. Flextronics specifically noted it wanted to make it clear it was not trying the issue by consent.

On review, we conclude the issue of agency was not "raised by the written pleadings [or] the evidence." Tex. R. Civ. P. 278; *see also* Tex. R. Civ. P. 67 (allowing issues tried by express or implied consent of the parties to be treated as if they had been raised in the pleadings). Accordingly, we conclude the trial court did not err in refusing to submit a question to the jury on agency.

We overrule Gespa's ninth issue.

### (f) Responsible third parties

In its tenth issue, Gespa contends the trial court did not have good cause for granting Flextronics's motion to designate Recom and Expeditors as responsible third parties, and to thereafter submit these parties to the jury for a finding on proportionate responsibility.

Section 33.004 of the Civil Practice and Remedies Code provides: "A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party. The motion must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date." Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a). Gespa asserts two reasons on why the trial court's grant of designation was error. First, it contends "the indivisible injury makes it impossible to apportion percentages to different defendants." Second, Gespa asserts Flextronics did not designate Inabata as a responsible third party, and it otherwise failed to timely designate Recom and Expeditors. We consider each argument in turn.

### (i) Joint liability

Gespa argues that because there is no market value for Phase I of the solar project, and because the remaining phases were canceled, it claims it is not possible to apportion the resulting

harm. Gespa cites a string of cases asserting that Chapter 33 does not apply to vicarious liability claims, and it further asserts "this is a conspiracy case." *See Guillory v. Dietrich*, 598 S.W.3d 284, 296 (Tex. App.—Dallas 2020, pet. denied) (explaining claims for conspiracy are not subject to Chapter 33); *Lakes of Rosehill Homeowners Ass'n v. Jones*, 552 S.W.3d 414, 420 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (same); *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 719 (Tex. App.—Eastland 2019, pet. denied) (same).

Gespa contends Chapter 33 is inapplicable to this case because conspiracy was directly asserted. However, the trial court granted directed verdict against Gespa on its conspiracy theory. Thus, because the conspiracy claim was rejected, Chapter 33 applied to Gespa's remaining claim of fraud. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a) (applying Chapter 33 to causes of actions "based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought").

### (ii) Timeliness

Gespa next contends Flextronics failed to designate Inabata as a responsible third party and failed to timely designate Recom and Expeditors as responsible third parties. The parties seem to agree that the deadline for designating responsible third parties was May 26, 2022, or 60 days before trial was set to begin. Nonetheless, the parties dispute the nature of the pleading filed and on what date. We begin with a review of applicable motions for designations.

Our review of the record shows Flextronics did in fact file on September 13, 2021, a motion to designate Inabata as a responsible third party, after Inabata was dismissed by a ruling of the federal district court. Notably, Expeditors also filed a motion to designate Inabata as a responsible third party. Flextronics also filed a motion for leave to designate Recom as a responsible third party on February 15, 2022, after the court granted Recom's special appearance. The record also shows that Flextronics filed a motion to confirm Recom's designation as a responsible third party

40

on June 28, 2022. On the same day, Flextronics filed a motion for leave to designate Expeditors as a responsible third party.

From this record, we conclude that Inabata was timely designated as a responsible third party. Gespa takes issue, however, because there is no order on Flextronics's designation of Inabata. But the record does contain an order on Expeditors's motion to designate Inabata as a responsible third party. Although Expeditors was later dismissed as a defendant, we see no reason why the trial court's order would otherwise not continue in effect. Moreover, Gespa gives no basis for disregarding this order. Said differently, there is nothing in § 33.004 that would allow Inabata to be struck on this ground. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(*l*) (articulating a single ground for striking a designation of a responsible third party: "that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage"); *see also In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 406 (Tex. App.—El Paso 2010, no pet.) (rejecting argument that designation of a responsible third party should be rejected when basis not authorized by the statute).

We also conclude Flextronics's designations of Recom was timely made. Gespa only references Flextronics's motion to designate Recom on June 28, arguing it was untimely. But the record shows Flextronics first sought to designate Recom on February 15, 2022, or more than 60 days before trial. The June 28 motion seems to be intended to obtain a ruling from the trial court. Gespa does not show why the later motion results in untimeliness on the part of the original designation.

As for Expeditors, Flextronics asserts Expeditors was dismissed from the suit on June 22, 2022, or less than 60 days before trial was set to begin. Thereafter, Flextronics filed their motion to designate Expeditors as a responsible third party. In the motion, Flextronics argued it had good

cause for filing the motion when it did because Expeditors was a party at the 60-day mark and was only dismissed 27 days before trial.

Gespa contends Flextronics did not have good cause because Expeditors was known to Flextronics from the beginning of the case. We disagree and conclude Flextronics had good cause for its later filing of its designation of Expeditors as a responsible third party. *See In re CVR Energy, Inc.*, 500 S.W.3d 67, 79 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding [mand. denied]) (allowing the designation of a former co-defendant as a responsible third party 29 days before trial because the former co-defendant was still a party at the 60-day mark); *see also Sanchez v. Castillo,* No. 05-18-01033-CV, 2020 WL 1042519, at *5 (Tex. App.—Dallas Mar. 4, 2020, no pet.) (mem. op.) (finding that because the party defendant sought to designate as a responsible third party was a defendant in the lawsuit until the morning of trial, the current defendant was not required to designate until that time). Gespa counters stating these cases are distinguishable because the plaintiff had nonsuited the dismissed defendants from the suit. We find that to be a distinction without a difference. Section 33.004 does not require a defendant to designate a co-defendant as a responsible third party in disclosures. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d). Accordingly, it is irrelevant whether the defendant was dismissed by a plaintiff's nonsuit or by a court's order, Flextronics's designation of Expeditors at the time it was dismissed was timely. We conclude Flextronics supported their motion with good cause.

### (iii) Statute of limitations

Gespa last contends Flextronics could not designate responsible third parties because the four-year statute of limitations on its fraud claim had run at the time of the designations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004 (barring designation of responsible third parties after the statute of limitations had run as to that party). Gespa contends that the alleged fraud was discovered in June 2017, which resulted in a deadline of June 2021 for bringing a fraud claim.

42

Accordingly, Gespa asserts Flextronics did not designate any responsible third parties until after the fraud limitations period had run.

The limitation imposed by § 33.004 is a "procedural safeguard[] that prevent[s] a defendant from undercutting 'the plaintiff's case by belatedly pointing its finger at a time-barred responsible third-party against whom the plaintiff has no possibility of recovery.'" *In re CVR Energy*, 500 S.W.3d at 73. It "seeks to address a defendant's interest in identifying nonparties who may have some culpability while recognizing that a plaintiff has time limitations on pursuing its claims against parties not already included in its suit." *Id.*

Flextronics asserts Gespa's argument is a red herring because Inabata, Recom, and Expeditors were all included as defendants by Gespa before the applicable statute of limitations had run. By including them as defendants, Flextronics contends that Gespa already knew about each party's potential culpability prior to the running of limitations. We agree. Flextronics did not have an obligation to "timely disclose" its co-defendants as responsible third parties, therefore, § 33.004 does not prevent it from designating its former co-defendant as a responsible third party after that party was dismissed. Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d).

For all these reasons, we overrule Gespa's tenth and final issue.

## V.   CONCLUSION

We affirm the trial court's order dismissing all claims against Recom. Additionally, we affirm the trial court's order enforcing the forum selection clause and granting Expeditors's motion to dismiss. Last, we affirm the trial court's take nothing judgment entered against Gespa and in favor of Flextronics.

GINA M. PALAFOX, Justice

October 9, 2024

Before Alley, C.J., Palafox and Soto, JJ.